# Mack v. Pittsburgh Railways Company, Appellant.

*Negligence—Street railways—Passengers—Dangers on platform of car—Contributory negligence—Case for jury—Damages—Measure of damages—Erroneous instructions.*

1. While a carrier is not bound to anticipate unusual and unexpected perils to its passengers either in transit or while entering or leaving its cars, yet its servants must be diligent at all times in protecting passengers from danger by the exercise of the highest degree of care which is reaonably practicable.

2. It is the duty of a carrier of passengers for hire, not only to transport them safely, but to provide reasonably safe means of ingress and egress to and from its cars.

3. A passenger has the right to assume that the platform, steps and running boards of a street car are reasonably safe for the purposes they are intended to serve unless he knows or by the exercise of ordinary care could know that they are defective.

4. While a passenger on a street railway car must exercise care in entering or leaving it, there is no hard and fast rule that requires him to be on the constant lookout for holes or other defects in the floor of the car or platform.

5. In an action to recover damages for injuries sustained by plaintiff in consequence of slipping upon grease and falling as she

was leaving the platform of a street car, the case was properly submitted to the jury where there was evidence from which the inference could have been drawn that the grease had been on the platform a sufficient time to have been detected had defendant's servants properly inspected the car and that although plaintiff was not looking upon the floor as she was leaving the car she was moving in a careful manner.

6. In such case the trial judge erred in instructing the jury that in assessing the damages they could determine what the plaintiff would probably lose in the increase of wages that might fall to her later on if it had not been for the accident, in the absence of evidence showing that there would be an increase in plaintiff's wages or that she would be able to make more wages in the future than she had made in the past, and in not directing the jury of his own motion that they should find the present worth of plaintiff's future earnings.

Argued Oct. 12, 1914.   Appeal, No. 3, Oct. T., 1914, by defendant, from judgment of C. P. Allegheny Co., Nov. T., 1910, No. 514, on verdict for plaintiff in case of Viola Mack v. Pittsburgh Railways Company.   Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ.   Reversed.

Trespass to recover damages for personal injuries. Before HAYMAKER, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $6,000 and judgment thereon. Defendant appealed.

*Errors assigned* were in refusing to direct a verdict for defendant, in refusing to enter judgment for defendant n. o. v. and instructions to the jury relating to the measure of damages.

*Craig Smith,* with him *Clarence Burleigh,* and *William A. Challener,* for appellant.

*Ralph P. Tannehill,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 11, 1915:

This is an action of trespass by a street railway passenger to recover damages for injuries which she alleges she sustained by reason of the negligent conduct of the railway company. The plaintiff, a young woman of twenty-two years of age, with two companions, Miss Rippey and Mrs. Darling, entered by the rear door a closed car of the Pittsburgh Railways Company, the defendant, on Penn avenue at the corner of Lang avenue in the eastern part of the City of Pittsburgh, about four o'clock on the afternoon of April 30, 1910, and rode to the corner of Ninth street and Penn avenue, a distance of about six miles. When the car stopped, the plaintiff followed by her companions went forward for the purpose of alighting at the front door of the car, and after she stepped down from the body of the car on the platform and was about leaving the platform, both her feet flew up and she fell into the street. No person left the car in front of her. She alleges, and introduced evidence to show, that there was switch-grease or tar on the front platform on which she slipped and fell. Miss Rippey, who was immediately behind her, testified that she saw a "piece of grease or tar on the platform," about the size and thickness of her hand, that she saw the imprint of the plaintiff's heel where she had slipped along in it, and that was what caused her to fall. She further testified that the grease had dust on it, and that there were footmarks, other than the plaintiff's, which indicated that it had been tramped. Mrs. Darling saw the plaintiff fall, and testified that there was a pretty good sized grease spot on the platform, that it was all flattened down and looked as if it had been walked in, that she saw the print of the plaintiff's heel where she had slipped, and that the grease was like that used on switches in the car tracks.

The defendant company introduced testimony but it was entirely of a negative character. It showed there

had been no report of the accident to the company, that it had a system of inspection at the barn, and regular men were assigned to inspect certain cars, which included the duty to clean the platform every evening. No record was kept of the cars inspected.

The learned court below submitted the case to the jury and a verdict was returned for the plaintiff. From the judgment entered thereon, the defendant company has taken this appeal. The first assignment alleges error by the court in not directing a verdict for the defendant, the second assignment is to the refusal of the court to enter judgment for the defendant notwithstanding the verdict, and the third assignment relates to that part of the charge dealing with the measure of damages.

The defendant contends that the grease or tar on the car platform was a substance entirely foreign to the operation of the car, and may fairly be presumed was dropped there inadvertently by another, possibly by some passenger who had boarded or alighted before the plaintiff met with her accident, and that, therefore, its presence on the platform, under the circumstances shown by the evidence, was not sufficient to convict the defendant of negligence. It is further claimed by the defendant's counsel that the jury was not aided in ascertaining the length of time the grease was on the platform by the fact that there was dust on the grease, as that might have been blown in at the opening of the door for the plaintiff to alight, nor by the footmarks in the grease, as they might all have been made by one person in changing his position. In other words, the defendant alleges that the evidence did not show that its employees placed the grease on the platform, or when it was placed there, or that it had been on the platform long enough for the conductor or motorman to have discovered it by exercising proper care of inspection.

We do not agree with the defendant company's contention that the evidence was not sufficient to send the case to the jury on the question of the company's

negligence. While a carrier is not bound to anticipate unusual and unexpected perils to its passengers, either in .transit or while entering or leaving its cars, yet its servants must be diligent at all times in protecting passengers from danger by the exercise of the highest degree of care which is reasonably practicable. It was the duty of the defendant, as a carrier of passengers for hire, not only to transport the plaintiff safely but to provide reasonably safe means of ingress and egress to and from the car: If this grease made the platform unsafe, it was the duty of the defendant's servants in 'charge of the car to remove it, and if they knew it was there or should have known by the exercise of proper care, and failed to remove it and it caused the plaintiff's injuries, the defendant would be responsible. It is not denied that there was grease on the platform, nor can there be any doubt that it caused the plaintiff to slip and fall into the street. A contrary finding by the jury would have been against the evidence. The contention of the defendant that the grease was entirely foreign to the operation of the car and might have been dropped on the platform by some passenger is not supported by the evidence. One of the witnesses testified that the grease looked like the grease used on the switches in the car tracks, which, as is well known, is in constant use by street railway companies to facilitate the operation of their cars, and the jury would have been justified in finding that the grease was of that character. The necessary inference would be, therefore, that the grease had been placed on the platform by one of the defendant's employees engaged in operating the car, or in applying the grease to the switches. The length of time that it remained in the car was not shown by direct evidence, but the jury would have been warranted in finding that it had remained there for some time, as it was covered with dust, had footmarks in it, and had been tramped over by other persons on the car, manifestly before the plaintiff attempted to alight, as no person

immediately preceded her to the front door. That it was not discovered at the morning inspection of the car was not in itself sufficient to relieve the defendant from liability for injuries resulting from its presence on the platform. If it was placed there at any time during the day while the car was enroute between its termini, and the defendant's servants in charge of the car saw it or had an opportunity to discover it by the exercise of proper care, it was their duty to remove it, and the failure to do so would impose liability on the defendant. The defendant company recognized this obligation, as its general foreman testified that it was the duty of the motorman or conductor to keep the platform clean, and a broom was kept on the car for that purpose. This, in effect, was, therefore, a rule of the company, and the failure to observe it, under the circumstances, was negligence: Kingston v. Boston Elevated Ry. Co., 207 Mass. 457.

The plaintiff's negligence was also for the jury. A street car passenger has the right to assume that the platform, steps and running boards of a street car are reasonably safe for the purposes they are intended to serve, unless he knows or by the exercise of ordinary care could know that they are defective: Smithers v. Wilmington City Railway Co., 6 Penn. (Del.) 422; Brassell v. New York Central & Hudson River R. R. Co., 84 N. Y. 241; Ohio & Mississippi Railway Co. v. Stansberry, 132 Ind. 533. In Neslie v. Second & Third Sts. Pass. Railway Co., 113 Pa. 300, where the plaintiff was actually aware of the dangerous condition of the step which was clearly obvious as well as indicated by the prevailing conditions of the weather, we held that the plaintiff's previous knowledge of the condition of the platform and whether it was reasonably prudent for her to attempt to alight in the way and manner she did, were questions for the jury. The plaintiff in the present case testified that she was alighting from the car "in a very careful manner." It is true, as the ap-

pellant points out, the plaintiff said that she did not see what she slipped on and was not watching the platform when she stepped on it, but this is not sufficient for the court to declare her guilty of negligence as a matter of law, in view of the fact that she had testified that she was using care in leaving the car. There might have been some sufficient reason, and her testimony would indicate as much, why she did not cast her eyes to the floor at the moment she stepped on the platform. While a passenger in a street car must exercise care in entering or leaving it, there is no hard and fast rule that requires him to be on the constant lookout for holes or other defects in the floor of the car or platform. Experience teaches that very few passengers on street cars ever anticipate the unexpected, that is, that the car in which they are riding is a defective or unsafe means of transportation. In fact it frequently occurs that the car is often so crowded that after the passenger arises from his seat to leave it, he has no opportunity to see the floor before he makes his exit. In the present case such conditions did not exist, it is true, but we are dealing with a general rule applicable to all persons who use street cars. We think it was for the jury to determine whether the plaintiff was exercising the care which the circumstances required at the time of the accident.

We must sustain the third assignment of error. The learned court said to the jury in his instructions on the measure of damages: "And you would probably have the right to determine what she (plaintiff) would probably lose in the increase of any wages that might fall to her later on, if it had not been for the accident; and in determining that you would have the right to consider her loss of earnings from the time she was injured to the present time and in the future." This was error as there was no evidence in the case showing that there would be an increase in the plaintiff's wages or that she would be able to make any more wages in the future than she had made in the past. If the plaintiff claimed that her earn-

ings would increase, the burden was upon her to produce evidence that would satisfy the jury of that fact. This was not done, and the learned court could not permit the jury to guess that the future would bring her greater rewards for her services than the past had done. Such instruction was condemned in McKenna v. Citizens Natural Gas Co., 201 Pa. 146, where we said that its tendency was harmful to the defendant as it was a suggestion calculated to swell the verdict to an amount beyond that established by the proofs in the case.

The charge relative to the measure of damages was also erroneous in not directing the jury that they should find the present worth of any future payments which were to be anticipated and capitalized in the verdict. The plaintiff is only entitled to the present worth of her future earnings, as we have repeatedly held, and the court of its own motion should have so distinctly instructed the jury: Wilkinson v. North East Borough, 215 Pa. 486; Burns v. Pennsylvania R. R. Co., 219 Pa. 225; Reitler v. Pennsylvania R. R. Co., 238 Pa. 1.

The third assignment of error is sustained, and the judgment is reversed with a venire facias de novo.