Bonczek et al. *v.* Philadelphia, Appellant.

Argued October 12, 1939.

Before
KELLER, P. J., CUNNINGHAM, STADTFELD, PARKER and
RHODES, JJ.

*James Francis Ryan,* with him *John J. K. Caskie,* Assistant City Solicitors, and *Joseph Sharfsin,* City Solicitor, for appellant.

*Philip A. Campbell,* with him *Victor Frey,* for appellee.

OPINION BY STADTFELD, J., December 14, 1939:

This is an action of trespass against the City of Philadelphia by the minor plaintiff through her father and by the father and mother in their own right. On May 2, 1936, about 7:45 P. M., which was in clear daylight, the minor plaintiff, who was within six days of her seventh birthday, went with another child, ten years old, to play in Allegheny Square, a public square of the City of Philadelphia. Allegheny Square was, and had been, for many years, used by great numbers of children as a public playground. Alongside one of the paths in the square was a partly demolished bench. Some years before, ordinary movable park benches had been placed in the square, but had been broken up by those who played there. Some years before the accident, they were replaced by a number of benches, each having three concrete posts with iron rod reinforcement in the concrete. To these posts were fastened planks for the seat and for the back. In the course of a few years, the bench in question had been broken by those using the park so that the two end posts and their iron reinforcing rods had been broken down to the level of the seat, all of the planks from the back of the bench had been removed, one of the seat planks was gone and the top of the center concrete post had been broken off so that the reinforcing rod was exposed for a few inches. The top of the post thus remaining was three inches wide by five inches deep and the supporting rod, three-eighths of an inch in diameter, was approximately in the middle of this space. This condition had existed for at least six months or longer.

In the testimony, each of the little girls blames the other for first attempting to get up on this post, but at any rate, the minor plaintiff climbed up on the seat of the bench, which was 24 inches from the ground, and then placed her foot on top of the concrete post which was 18 inches higher than the seat planks. She then stood upon the concrete post and jumped to the ground back of the bench. Upon her second attempt to do so, however, her foot slipped as she sprang upward and she fell, straddling the top of the concrete post. She received an injury which consisted in a tearing of the perineum, being the space between the vagina and the rectum. This apparently healed, but one medical expert testified that from an examination made shortly before the trial, he concluded that it had re-opened and that there would need to be a subsequent operation after the child grew older. He also testified that this condition would interfere with normal childbirth. The child resumed her school sessions in the fall and has been attending regularly since.

The case was tried February 14, 1939, before FLOOD, J. The defendant offered no evidence. The trial judge refused a motion for non-suit and declined defendant's point for binding instructions. The jury rendered a verdict of $2,000 for the minor and $500 for the parents. Motions for new trial were filed by both parties, but not pressed. Defendant filed a motion for judgment non obstante veredicto, which was overruled by the court en banc and these appeals followed the entry of judgments on the verdicts.

The single question involved in these appeals is that of liability of the defendant under the circumstances.

A municipality is liable for damages sustained by reason of its negligence in maintaining a public playground. This principle of law was clearly set forth in *Paraska et al. v. Scranton*, 313 Pa. 227, 169 A. 434, wherein the court, speaking through Mr. Chief Justice FRAZER, after pointing out that it had uniformly per-

mitted recovery for the negligent maintenance of parks, and after citing the applicable cases, said, at p. 229: "No sound distinction exists between public parks and public playgrounds and if recovery is permitted for municipal negligence in the former, it must also be allowed in the latter. ...... Where a city undertakes to manage and supervise property, such as public parks and playgrounds, it must take care to keep that property in a reasonably safe condition for those invited to come upon it, and this is particularly true in case of children in playgrounds." See also, *Honaman v. Philadelphia,* 322 Pa. 535, 185 A. 750.

An application of this principle is found in the retrial of the Paraska case, an appeal from which is reported in 122 Pa. Superior Ct. 1, 184 A. 276. In that case, the minor plaintiff lost her grip upon ropes of a swing and was thrown to the ground, striking a stone with sharp and jagged edges which protruded a few inches from the surface at a point approximately eight feet from the base of the swing and directly in its path when in motion. This court said, at p. 6, in an opinion by Judge CUNNINGHAM: "It is quite clear, so far as the law of the present case is concerned, that it falls within the line of cases in which liability has been enforced against municipalities, upon proof of the negligence of their servants. The evidence relating to the presence of the rock was conflicting and raised issues necessarily for the jury. An attentive reading of the record convinces us there was testimony sufficient, if believed, to support the verdict. We adopt the following excerpt from the opinion of the court below, supporting its denial of defendant's motion for judgment. n. o. v. 'From this testimony (of plaintiff and her brother and sister) the jury could infer that the stone was buried in the ground. There was exposed a portion of the stone about twelve inches long and four inches high, with a jagged edge. The stone had been buried in the ground about five

inches and people had walked over it, and its appearance was like the surrounding surface. The photograph and the other testimony permitted the jury to infer that it had been there for a long period of time, sufficiently long for the city to have constructive notice. *Mack v. Pittsburgh Rys. Co.,* 247 Pa. 598-602, 93 A. 618.' "

The city, in its argument, contends that it could not anticipate that the iron rod sticking up some three inches from the center cement post of the bench would be of danger to users of the park. Both the stone, in the Paraska case, and the iron rod or pipe in the instant case, were dangerous to, and the cause of injury to, the children. Both were unmovable objects. In neither case was the child injured because of the breaking of any portion of either the stone or the swing in the Paraska case, or of any breaking of the iron pipe or rod in the instant case. In the Paraska case, the injury was brought about by the slipping of the child's hands from the ropes of the swing, and actually caused by the sharp, jagged edges of the rock. In the instant case, the injury was brought about by the slipping of the child's foot from the bench or the cement post, and actually caused by the protruding dangerous iron rod. That is to say, in both instances, the proximate cause of the injury to the children was the dangerous, defective condition of the premises of the defendants.

The reckless and thoughtless tastes and trends of childhood are well understood and stated in the law of our State. The case of *Kreiner v. Straubmuller,* 30 Pa. Superior Ct. 609, 612, in quoting from *Power v. Harlow,* 57 Mich. 107, 23 N. W. 606, illustrates this: "Children, wherever they go, must be expected to act upon childish instincts and impulses; others, who are chargeable with a duty of care and caution toward them, must calculate upon this and take precautions accordingly. If they leave exposed to the observation of children anything that would be tempting to them, and

which they in their immature judgment might suppose they are at liberty to handle or play with, they should expect that liberty to be taken."

Appellant contends that it was not bound to anticipate that children would climb upon the bench and post, and in this contention relies largely on *Guilmartin v. Philadelphia,* 201 Pa. 518, 51 A. 312, and particularly this quotation therefrom, at p. 520: "On the other hand, the city was not required to anticipate and guard against dangers which might result from the improper use of objects safe in themselves and for the use for which they are designed."

The trial judge, in the instant case, in his opinion, has stated that the verdict was supported by the evidence, as follows: "In our opinion the jury's verdict was supported by the evidence. The bench was dangerous and attractive to children. The jury saw pictures of it. They saw the center post sticking up above the seat and the shattered end posts, literally luring little children to go climbing and to play 'follow the leader' over it. While large enough for a child to put her foot on it, the top of the post was too small to let her do it safely. Further, it was jagged and rough concrete, and from it the half inch iron rod protruded three inches. Numbers of children played in the square regularly. Its purpose was to furnish a place of recreation. The city knew these things and knew that the dangerous condition had existed for a long time. ......".

The city does not contest nor raise the question of notice, it having been conclusively proved by many witnesses that the dilapidated condition of the benches had continued for some time prior to the accident. Here we have an object which was not safe in itself, but was in such a condition that the City might anticipate danger from its use by children.

The other cases relied upon by appellant are readily distinguishable from the instant case.

In view of the fact that the situs of the accident was a public playground, and the tender age of the child, we believe the court properly entered judgments on the verdicts.

The assignments of error are overruled and the judgment in each case is affirmed.