Sharble et al. *v.* Kuehnle-Wilson, Inc., Appellant.

Argued April 22, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

Judgments reversed; reargument refused July 6, 1948, October 1, 1948.

*Joseph W. Henderson*, with him *Harrison G. Kildare, George M. Brodhead* and *Rawle & Henderson,* for appellant.

*George H. Detweiler*, with him *Robert A. Detweiler* and *Albert S. Herskowitz*, for appellees.

OPINION BY MR. JUSTICE DREW, May 24, 1948:

Plaintiffs, Joseph C. Sharble and Charles Hooker, brought individual suits in trespass to recover damages for injuries sustained by them while laying a steel roof on the machine shop of the Heppenstall-Eddystone Corporation at Eddystone, Pennsylvania. These actions were instituted against defendants, Heppenstall-Eddystone Corporation, Raymond Concrete Pile Company, and Kuehnle-Wilson, Inc. The suits were tried together, and, after the jury retired but before verdicts were returned, plaintiffs took voluntary nonsuits as to the first two defendants. The jury rendered verdicts in favor of plaintiffs and against defendant, Kuehnle-Wilson, Inc. Defendant's motions for judgment n. o. v. and for a new trial having been dismissed and judgments having been entered on the verdicts, these appeals followed.

Viewing the testimony in the light most favorable to plaintiffs, as we are required to do under these circumstances, the following pertinent facts appear: Both plaintiffs were sheet metal workers employed by Eric Welding Company, a subcontractor, in putting a Holorib steel roof on an extension to a building, owned by defendant, Heppenstall-Eddystone Corporation, and being erected by defendant, Raymond Concrete Pile Company. The other defendant, Kuehnle-Wilson, Inc., was the painting subcontractor under the general contract. Neither subcontractor, Eric Welding Company or Kuehnle-Wilson, Inc., had authority or control over the work or the employees of the other.

The building being erected was of steel framework, with steel uprights and cross pieces, forming the sides. It was approximately 1,000 feet long, 87 feet wide and 50 feet high. A ventilating monitor ran lengthwise along the peak of the roof. The roof structure was supported by steel girders, which extended, 16 feet apart, from the

eaves to the monitor. Each 16-foot space between these roof girders is known as a bay. Purlins, or small beams about 2 inches wide across the top, ran across each bay, at 6-foot intervals, parellel with the eaves, and connected the girders. The purlins constituted the framework on which the steel roof was to be laid. The roof slanted downward from the monitor to the eaves at a pitch or drop of about 4 feet over a distance of 46 feet, or approximately 6 inches in 6 feet.

The Holorib steel roof consisted of prefabricated sections of light gauge sheet steel, the sheets being used in this construction being 6 feet long and 18 inches wide. Two wedge-shaped ribs were pressed lengthwise in each sheet, with a third full rib, U-shaped, running down one long side and a half rib, L-shaped, down the other side. The half rib, shaped like an "L", was designed to fit into the U-shaped rib extending down the side of the sheet laid next to it, making a substantially continuous surface on the weather side of the roof.

In laying these sheets, it was the custom to place them at right angles to the side of the building, beginning at the end wall at the lower edge, or eave. They are laid rib-side down, across the eave girder and first purlin. After the first sheet is laid, the next one is placed along side with its "L" side overlapping into the "U" side of the first sheet, and so on until all 12 sheets in the first run or course across the first bay are laid. The second run in that bay is then laid, and so on up to the monitor until the first bay is finished. The first sheet of the run is securely anchored when laid, by being spot-welded to the eave girder and to the first purlin. The other sheets in that run are held in place merely by the interlocking process along the sides, until the run is completed, then they are driven into position with a mallet and welded to the building superstructure. The sheets in the second and any succeeding bay are not welded until the entire run across that bay is placed in position and fully adjusted. In laying these sheets suc-

cessively from one side of a bay to the other, it is necessary for the roofers to walk on the sheets they have just laid.

The employees of the Eric Welding Company had completed and tack-welded the entire first bay of the roof. As it is customary to have the purlins, girders and other structural metal work of the roof painted before the sheets are laid, Lundy, superintendent of the Eric Welding Company roofers, on July 19, 1942, requested Loftus, foreman of the painters employed by defendant, Kuehnle-Wilson, Inc., to get the second bay ready for the roofing men to lay the additional metal roofing. Following that request, Loftus the next day caused several bays to be painted adjoining the first bay on which the roofing sheets had been laid. On July 21, 1942, he informed Lundy that these bays had been painted, that they were ready for use and it was all right for the roofers to work on them. In the early afternoon of that day, Lundy sent three sheet metal workers, both plaintiffs and one Greenhalg, on the roof to lay the roofing sheets across the second bay. Greenhalg received the sheets as they were hoisted from the ground, took them off the pulley and carried them to plaintiffs, who started to lay them.

Plaintiffs interlocked the first sheet of the first, or eave, run in the second bay into the last sheet of the first run in the first bay, and proceeded to lay the additional sheets, interlocking them one with the other. About 2 o'clock in the afternoon, when these roofers were laying the sixth sheet in that run, that sheet and the others which they had just laid, slipped off the purlin. Plaintiffs fell to the floor and were seriously injured.

Defendant contends that the learned court below erred in not entering judgments in its favor, notwithstanding the verdicts, alleging the evidence offered by plaintiffs was entirely inadequate to prove negligence on its part, and for the further reason plaintiffs were guilty of contributory negligence as a matter of law.

It is clear that defendant, Kuehnle-Wilson, Inc., owed the duty of ordinary care in the conduct of the work of painting the roof superstructure so as not to expose the employees of Eric Welding Company, the roofing subcontractor, to unnecessary danger. When Lundy, the latter's superintendent, was informed by Loftus, defendant's foreman, that the roof steel had been painted and was ready, Loftus knew that the roofers would be brought in contact with the roof girders and purlins, which had recently been painted, and that they might be seriously injured if they attempted to lay metal sheets over paint which had not dried sufficiently. In this connection, in *Grogan v. J. H. Hinkle & Co., Inc.*, 70 Pa. Superior Ct. 585, 588, the Superior Court, speaking through Judge KEPHART, later Chief Justice of this Court, said: ". . . it is the duty of independent or different masters engaged about the same general employment to use such ordinary care and diligence in the conduct and prosecution of their several contracts or employments so as not to expose the servants of the master working with them to danger and if injury results to the servants of either, through failure to exercise such care and diligence, the master whose servants caused the injury will be liable in damages: Johnston v. Ott Bros., 155 Pa. 17; Alexander v. Maryland Steel Co., 189 Pa. 582; Kitchin v. Riter-Conley Co., . . . [207 Pa. 558]; Urban v. Focht, 231 Pa. 623." See also *Bisson v. John B. Kelly, Inc.*, 314 Pa. 99, 170 A. 139.

Neither plaintiff was able to state why this unfortunate accident happened. Each only realized very suddenly that the sheets in the first run in the second bay which they were then laying were slipping and that they were about to fall. They did not remember anything else in this respect. Greenhalg, who was on the roof with plaintiffs at the time of the accident, did not see what happened, for at that particular moment, he was looking in the other direction. He heard a noise; he then turned around and ran to the place where plaintiffs

had been working. All he saw were the hands of one of plaintiffs, and that they disappeared before he could render assistance. The only testimony adduced to affix liability to defendant was as follows: When the bandages were removed from the arms of plaintiff, Sharble, he stated that he saw on his arms gray paint similar to that used on the roof of the building by defendant, and that no such paint was there when he was on the roof. Greenhalg testified that when he went back to the building the morning following the accident, he found "smudges" of gray paint on two of the roof sheets which had dropped to the floor when plaintiffs fell, and that no such paint was on these sheets before they were laid by plaintiffs. This witness also stated that he went upon the roof at that time and there "The marks of the steel showed the impression on the paint". He further said that he then discovered the paint on the purlin was not yet dry, by rubbing the purlin for a space of about 2 or 3 inches hard with his thumb. From this circumstantial evidence, plaintiffs seek to draw the inference that the sole cause of the accident was due to the paint placed on the roof superstructure by defendant's employees, which had not sufficiently dried.

Under these circumstances, it is well settled, as said by this Court in *Donaldson v. Pittsburgh Rwys. Co.*, 358 Pa. 33, 37, 55 A. 2d 759: "Absence of eye witnesses to an accident is not fatal. There must, however, be affirmative proof of negligence of a defendant before a jury may be permitted to so determine: VanTine v. Cornelius, 355 Pa. 584, 586, 50 A. 2d 299, 300. 'It is the burden of the plaintiff to produce evidence of circumstances "so strong as to preclude the possibility of injury in any other way and provide as the *only* reasonable inference the conclusion" that the [accident] was caused by the negligence of defendant in the manner alleged: Pfendler v. Speer, 323 Pa. 443, 448, 185 A. 618; Houston v. Republican Athletic Association et al., 343 Pa. 218,

220, 22 A. 2d 715': Stauffer v. Railway Express Agency, Inc., 355 Pa. 24, 29, 47 A. 2d 817, 819."

A very careful study of this entire record has forced us to conclude that the evidence produced was not at all sufficient to support verdicts against defendant, Kuehnle-Wilson, Inc. Paint could easily have been smeared on the arms of plaintiff by brushing against the side framework of the building when he fell. The day following the accident, Greenhalg only tested a space of 2 or 3 inches on the purlin and there found some wet paint. A jury could only guess, because there was wet paint on a 2 or 3-inch patch, that such condition caused the slipping of a number of steel sheets which had been interlocked. The smudges of paint on 2 of the sheets which fell to the floor could have been brought about by their striking the painted uprights of the building or by their falling into paint previously spilled on the building floor. From the evidence presented, it appears that this accident could have been brought about by vibration caused by plaintiffs and their fellow employee, Greenhalg, walking over the sheets, which had been laid on this slanted surface without being securely fastened. Such a possibility was not precluded by the evidence. At any rate the testimony is not such as to provide that the only reasonable inference is that the alleged negligence of defendant was the cause of plaintiffs' injuries.

Because of this conclusion we need not discuss the question of plaintiffs' alleged contributory negligence as a matter of law.

The learned court below was in error in refusing to enter judgments in favor of defendant, non obstante veredicto, for unquestionably these verdicts are based upon nothing but conjecture, and not upon affirmative proof of negligence of defendant.

Judgments reversed, and here entered for defendant, Kuehnle-Wilson, Inc.