## Lanni *v.* Pennsylvania Railroad Company, Appellant.

Argued April 22, 1952. Before DREW, C. J. STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*H. Francis DeLone*, with him *F. Hastings Griffin, Jr.*, and *Barnes, Dechert, Price, Myers & Rhoads*, for appellant.

*John J. McDevitt, 3rd*, with him *Peter P. Liebert, 3rd*, for appellees.

OPINION BY MR. JUSTICE BELL, May 29, 1952:

This appeal involves the question of whether plaintiff's proof of negligence was sufficient to take the case to the jury or, more particularly, whether the evidence of constructive notice was sufficient.

Plaintiffs brought an action of trespass for injuries to the wife-plaintiff which resulted from a fall on the station driveway of the defendant at North Philadelphia Station, Philadelphia. They alighted at North Philadelphia Station on September 8, 1946, at approximately 3:30 p.m. They walked from the station platform to one of the sidewalks just outside the station building. They then stepped from the sidewalk curb down onto the station driveway at a place where motor vehicles were very frequently driven and ofttimes stopped or parked. Mrs. Lanni's foot slipped upon a spot of oil or grease (hereinafter referred to as a grease spot) which was in the station driveway and she fell onto the driveway and suffered substantial injuries, for which the jury gave her a verdict. It is not clear from the testimony whether she stepped directly from the sidewalk onto the grease spot or whether her second

step was on the grease spot and for purposes of this case it is immaterial.

The testimony as to the grease spot was vague and contradictory, but since the question on this appeal is whether the defendant is entitled to judgment n.o.v., the testimony must be considered in the light most favorable to the plaintiffs and any conflict in the testimony must be resolved in their favor. *Miller v. Pennsylvania R. R.*, 368 Pa. 507, 84 A. 2d 200; *McDonald v. Ferrebee*, 366 Pa. 543, 79 A. 2d 232. The grease spot was approximately one foot square and was covered with dust or dirt so that the plaintiff did not notice any danger. The driveway was dusty or dirty; the day was clear; there was no evidence whether it was calm or windy. There was likewise no evidence how thick the grease spot was and *in particular there was no evidence how long it had been on the driveway.* When Mrs. Lanni slipped, her heel left a mark through the entire length of the grease spot, but there were no other marks thereon which might have been made by other pedestrians.

Both the trial Court and the Superior Court were of the opinion that the jury could infer from the presence of dust or dirt which covered the grease spot that it must have existed a sufficient length of time to enable the defendant, in the exercise of reasonable care, to discover and correct the condition. This is the narrow question in the case.

The law which is applicable is well settled and has been recently thus stated in *Thompson v. Gorman*, 366 Pa. 242, 246, 77 A. 2d 413, "The mere happening of an accident is no evidence of negligence. . . . Plaintiff has the two-fold burden of proving that the defendant was negligent and that his negligence was the proximate cause of the accident: Houston v. Republican Athletic Association, 343 Pa. 218, 220, 22

A. 2d 715; Reddington v. Philadelphia, 253 Pa. 390, 392, 98 A. 601; Erbe v. Philadelphia R. T. Co., 256 Pa. 567, 570, 100 A. 966; Martin v. Marateck, 345 Pa. 103, 106, 27 A. 2d 42; Stauffer v. Rwy. Exp. Agency, 355 Pa. 24, 25, 47 A. 2d 817."

Negligence is the absence or want of care which a reasonable man would exercise under the circumstances. *Maternia v. P. R. R.*, 358 Pa. 149, 56 A. 2d 233. We said in *Miller v. Hickey*, 368 Pa. 317, 325, 81 A. 2d 910: ". . . negligence need not be proved by direct evidence, but may be inferred from attendant circumstances if the facts and circumstances are sufficient to reasonably and legitimately impute negligence: Rockey v. Ernest, 367 Pa. 538, 80 A. 2d 783; Bills v. Zitterbart, 363 Pa. 207, 69 A. 2d 78; Turek v. Pennsylvania R. R. Co., 361 Pa. 512, 64 A. 2d 779; Randolph v. Campbell, 360 Pa. 453, 62 A. 2d 60; Wright v. Straessley, 321 Pa. 1, 182 A. 682."

A jury is not permitted, however, to speculate or guess; conjecture, guess or suspicion do not amount to proof: *DeReeder v. Travelers Insurance Co.*, 329 Pa. 328, 198 A. 45; *Sharble v. Kuehnle-Wilson, Inc.*, 359 Pa. 494, 59 A. 2d 58.

The defendant in this case was not an insurer; it owed to the plaintiff only the duty of reasonable care in the circumstances, viz., to correct any unsafe condition which was discoverable by the exercise of reasonable care and diligence. Plaintiff had the burden of proving a defect or unsafe condition and that defendant had actual or constructive notice thereof. There was no evidence of actual notice. Was the evidence as to the time the dangerous condition existed sufficient to enable the jury to reasonably and legitimately infer constructive notice? The Superior Court in *Bremer v. Smith, Inc.*, 126 Pa. Superior Ct. 408 411, 191 A. 395, has ably expressed the law with respect

to constructive notice: "What will amount to constructive notice of a defective or dangerous condition existing upon a defendant's premises, necessarily varies under the circumstances of each case. Some of the factors affecting the question, in addition to the time elapsing between the origin of the defect and the accident, are the size and physical condition of the premises, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, its probable cause and the opportunity which defendant, as a reasonably prudent person, had to remedy it: Langley v. F. W. Woolworth Co., 47 R. I. 165, 131 A. 194. . . .

"The Restatement of the Law of Torts, under the title 'Special Liability of Possessors of Land to Business Visitors' sets up under Section 343 the following standard of care: 'A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them. . . .'" See also *Gallagher v. Children's Aid Society*, 344 Pa. 152, 23 A. 2d 452.

It is matter of common knowledge that motor vehicles leak or drop oil or grease both in travel and while parked. There was no evidence, facts or circumstances which were sufficient to enable a jury to reasonably and legitimately impute negligence, i.e. constructive notice of the unsafe condition. While the spot was soft and covered with dust or dirt, there were no other footprints on it except those of the plaintiff, which indicates it was of recent origin; nor is there the slightest evidence from which it could be reasonably and legitimately inferred in what period of time the

dust or dirt could accumulate with or without wind in that particular locality. It is clear therefore that it could not be determined from any or all of the circumstances and at best it would only be a guess whether the grease spot was on the driveway 10 minutes, 10 hours or 10 days prior to plaintiff's accident.

Plaintiffs rely on *Mack v. Pittsburgh Rwy. Co.*, 247 Pa. 598, 93 A. 618. That case is distinguishable (1) because the jury could have found from the evidence that the grease had been placed on the platform by defendant itself and (2) because it must have remained there for a considerable length of time as it was not only covered with dust, but had footmarks on it showing it had been tramped over by other passengers.

The judgment is reversed and is here entered for the defendant non obstante veredicto.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

This case fell within the appellate jurisdiction of the Superior Court. The matter involved is as to the sufficiency of the evidence to furnish a certain inference essential to a finding of liability. I fail to see wherein this court is justified in substituting its judgment for that of the Superior Court with respect to the factual implications afforded by the evidence.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

A woman passenger descends from a railroad train and proceeds from the station platform to the street to board a conveyance to her home. While still on railroad property she is thrown to the pavement, sustaining serious injuries. Immediate inspection develops that her fall is due to stepping on to an accumulation of

grease and oil whose presence has been concealed by such a quantity of dirt and dust that the slippery area resembles in color and texture the remainder of the pavement, and cannot be distinguished therefrom.

This, to me, makes out the clearest kind of negligence on the part of the owner and custodian of the pavement. If there had been a hole in the street, covered over with non-resisting material resembling the entire surface of the thoroughfare, the responsibility of the owner for injuries resulting from a fall into such a hole could not have been greater.

The jury before which this cause was tried found negligence on the part of the defendant. The verdict was approved by the court en banc below, and then the Superior Court of our Commonwealth, after a thorough review of the entire case, unanimously affirmed the verdict and the decision of the court below. While, of course, multiplicity of approval is no guarantee of legal correctness, a thrice proclaimed juridical affirmance of a set of circumstances is not to be lightly set aside where the only question is one of fact and inferences to be drawn therefrom.

The issue here is not one of involved legal principles.

It is not at all disputed that on the defendant company's pavement there appeared a quantity of grease and oil, of lineal dimensions described by one witness as equivalent to the size of a prostrate person's body. Another witness said that the involved area was at least a foot square. Even if we assume the lesser dimensions to represent more accurately the extent of the danger area, the area was certainly sufficiently large for officers, agents and employes of the defendant company to see it and to take precautions against its being the cause of mishap to its travelling patrons.

Did the railroad company know of this grease accumulation on its pavements? The witness Jeane Klein

testified that immediately after the accident and while the injured plaintiff was still lying on the roadbed, an employe of the defendant company came up with a release which he tried to have her sign. If this defendant's employe could appear, almost like a genie from an Aladdin's lamp, to obtain a waiver from the injured person, practically simultaneously with the happening of the untoward event, it is not too much to assume that he could have been present even before the accident and have witnessed the grease, which *no one* denies was spread on the surface of the roadway.

But, entirely apart from this most likely very direct notice, there was the constructive notice which the defendant did not and could not refute.

The majority opinion states that there is no evidence as to whether the grease lay at the indicated point for ten minutes, ten hours or ten days. I believe we can exclude at once the ten minute hypothesis because the spread out grease could not have acquired the appearance of the pavement in ten minutes. Nothing less than a current of air of cyclonic proportions or the emptying of a coal truck could cover a sizeable area of grease or oil in a matter of minutes. Therefore, hours at least must have elapsed since the grease or oil spilled.

It is stated also on behalf of the majority that the record does not show whether September 18, 1946, the day of the accident, was a calm or a windy day. I believe we can take for granted that normally the weather in mid-September, in the North Temperate Zone, is mild. From a meteorological point of view, mid-September is the most attractive period of the year. With heat-induced storms things of the past and autumm winds yet to arrive, Nature pauses to drink in the wine-mellow air of departing Summer.

If there had been any violent turbulence of atmosphere that day, witnesses would have remembered the

phenomenon and the weather records would have revealed it. And, as a matter of fact, there was direct testimony that it was a "nice day," "clear and daylight."

The grease on which the plaintiff fell was not simply a glazed patina or shine on the surface of the pavement. It was a thickish substance of a depth that caused a witness to say that she could see the "definite imprint where her (the plaintiff's) heel had gone through." This witness, (who, incidentally was an utter stranger to the plaintiff, having followed her out of the station on the sidewalk and observed her fall) also testified that she saw in the grease a "big ridge". This evidence as to the thickness of the grease lends weight to the proposition that the grease was an accumulation rather than a chance trickle of oleaginous substance. It also fortifies the proposition that the grease was adhering to the pavement for a considerable period of time before the accident.

The majority opinion states that "it is a matter of common knowledge that motor vehicles leak or drop oil or grease both in travel and while parked." It is this very common knowledge which puts the defendant on notice to keep its roadways and footways safe. It must always be remembered in appraising responsibilities in this case that the accident happened on the defendant's premises, premises as much under its jurisdiction as the aisle of the railroad cars through which the passengers must proceed in reaching their seats or leaving them.

A case almost precisely on all fours with this one was decided by the Superior Court in 1935. (*Hagen v. Standard Oil Co.,* 119 Pa. Super. Ct. 337). There the plaintiff slipped on grease, also covered with dust. There was no direct evidence in the case as to the length of time the grease had lain in the driveway of the de-

fendant. In sustaining the verdict rendered in the court below, the Superior Court held that the matter of notice and negligence was a question of fact for the jury.

Although the grease in the case of *Mack v. Pittsburgh Rwy. Co.*, 247 Pa. 598, was assumed to have been dropped on to the street car platform by an employe of the defendant company, the responsibility of the defendant would not have been any the less had it been dropped by a stranger, provided it had lain there long enough to constitute constructive notice to the company, since, as this Court held, the defendant was charged with periodical inspection of its equipment and premises.

To expect that the plaintiff must show the exact moment the grease fell to the pavement is to impose a burden of proof beyond what the law requires. ". . . since proof to a degree of absolute certainty is rarely attainable in any litigated factual controversy, the law requires only that the evidence as to the operative cause of the accident be enough to satisfy reasonable and well-balanced minds that it was the one on which plaintiff relies." (*Ligouri, Admr., v. Philadelphia*, 351 Pa. 494, 498, 41 A. 2d 563.)

While the plaintiff must establish that her injuries are the result of the defendant's negligence, she is not required to produce what is unproduceable. In the realm of the unknowable, it is not fair to impose a penalty on the plaintiff for ignorance and award the defendant an advantage for the same ignorance. After all, the accident happened on railroad property, and the railroad company certainly is charged with an accurate and precise knowledge of what is happening on its domains, far and above that which could, by any stretch of reasoning, be expected of the plaintiff.

When the plaintiff proved the presence of the grease and its camouflaged outer aspect, it submitted

that this cloak of camouflage could have been fashioned only by the tailor of time. This was a fair, honest and logical inference, one which would appeal to a prudent person. It then devolved upon the Pennsylvania Railroad Company to rebut this inference which, together with the other facts, had produced a prima facie case of liability against it. But the defendant was satisfied to let the issue go to the jury without presenting any evidence whatsoever on the subject. The jury then found that the defendant company knew or should have known of the presence of the grease, and, from this finding the jury moved easily to the conclusion, under the judge's instructions, that there was a duty on the part of the defendant to remove this lurking menace, ready to strike down the unwary and the uninformed. When it failed to do this, it committed a negligence which threw the plaintiff to the street to her serious injury. They found the defendant liable.

I agree with the jury and would let their verdict stand.