Vincent WATSON

v.

NORTH SHORE SUPPLY COMPANY
and Levitt & Sons, Inc.

No. 15786.

United States District Court
E. D. Pennsylvania.
Dec. 27, 1956.

Albert C. Gekoski, Philadelphia, Pa., for plaintiff.

Michael A. Foley, Philadelphia, Pa., for North Shore Supply Co. and Levitt & Sons., Inc.

KRAFT, District Judge.

Plaintiff, a New Jersey citizen, instituted this action against North Shore Supply Company (North Shore), and Levitt & Sons, Inc. (Levitt), New York corporations, and Harold H. Farquer, a Pennsylvania citizen, to recover for personal injuries. The action against Farquer was dismissed, with prejudice, before trial.

At the trial neither North Shore nor Levitt offered any evidence. Each filed a written motion for a directed verdict on which the court reserved decision. The case was submitted to the jury which returned a verdict for the plaintiff against Levitt and a verdict for the defendant, North Shore. Thereafter Levitt filed a timely motion to have the verdict and the judgment entered thereon set aside and to have judgment entered in accordance with its motion for a directed verdict. The stated specific grounds for Levitt's motion were: (a) plaintiff failed to establish any negligence of defendants that was an efficient cause of the accident which caused the injury; (b) plaintiff was guilty of contributory negligence; (c) plaintiff, if a mere volunteer, assumed the risks of the work; (d) plaintiff was chargeable with the negligence of a fellow servant; (e) plaintiff's remedy was limited solely to benefits he was entitled to receive under the Pennsylvania Workmen's Compensation Act, 77 P.S.Pa. § 1 et seq.

Though Levitt's brief appears to have abandoned all but one of the reasons initially assigned in support of its motions, since F.R.C.P. 50(b), 28 U.S.C., provides that the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion, we will consider, seriatim, the several reasons assigned.

(a) *Plaintiff failed to establish any negligence of Levitt that was an efficient cause of the accident which caused the injury.*

From the evidence the jury was warranted in finding the following as fact:

At the time of the accident Farquer was, and for some years previously had been, an employee of Levitt. Though not a graduate engineer, he had abundant practical experience in construction engineering. In April 1952, he was superintendent in charge of construction and installation of sewers and concrete hoppers for Levitt in the development of Levittown, Pa.

A few days before the accident, Farquer was transferred from the task of supervision of the installation of a section of sewer line to that of construction of a dock. This dock on the Delaware River was necessary to facilitate delivery of building materials to the site by ship. While construction of the dock was of primary benefit to North Shore, it was in the regular course of Levitt's business as a developer of large tracts.

Farquer required help and was authorized, for that purpose, to procure some men from Roadway Construction Co., the plaintiff's employer and a subcontractor of Levitt. With the help of some men from Roadway the work of driving the piling began on the morning of April 4, 1952. During the afternoon it became impossible, by the method employed, to drive the piling beyond a certain depth because of an underground strata of large stones along the river bank.

The method of pile-driving adopted by Farquer was alternately to raise and lower the pile by means of a crane boom while a stream of water under high pressure "boiled out" the river bed where the pile descended. When the troublesome rocky condition became apparent, Farquer decided to improvise by adding more weight at the top of the pile. He placed a piece of 20 inch diameter cast iron sewer pipe as a sleeve over the upper end of the pile. A nearby piece of one inch diameter hemp rope, which was weatherbeaten and not new, was used to secure the pipe to the pile to prevent the pipe from sliding vertically down the pile. This rope supported most of the pipe's three hundred pound weight. The end of the pipe which rested on the rope was irregular, rough and sharp since it had been cut from a larger section.

The plaintiff arrived at the site at this time and began to work under Farquer's instruction. As was foreseeable, the subsequent alternate upward and downward movements of the pile combined with the heavy weight and the rough, sharp edge of the pipe to cut the rope, and the pipe fell. The plaintiff who, at Farquer's direction, was guiding the lower end of the pile was struck and seriously injured by the descending pipe.

■■■ As a man extensively experienced in construction engineering including, inter alia, the driving of piling, Farquer was negligent in failing to foresee that this combination of great weight, the sharp, rough pipe-edge, and the weatherbeaten rope together with these forceful movements of the pipe and pile created a condition of danger to anyone immediately below the suspended pipe. Even more pointed was Farquer's imprudent failure to inspect either the pipe or the rope before so using them in this mechanical improvisation.

The fact that Farquer placed himself in a position of danger and was also injured did not mitigate the danger of the condition he created but emphasized his carelessness under the circumstances.

(b) *Plaintiff was guilty of contributory negligence.*

(c) *Plaintiff, if a mere volunteer, assumed the risks of the work.*

Since the defenses of contributory negligence and assumption of risk are so

closely allied, they will be considered together; however, plaintiff's status as a volunteer or otherwise will be reviewed later.

Plaintiff arrived at the site after the pile, with the pipe attached, had been re-connected to the crane boom and raised vertically about twenty feet. Plaintiff did not notice the presence of the pipe when he took his position with his arm around the lower part of the pile to guide its downward course into the partially created hole. Had he observed the pipe, he would have been unable clearly to discern the condition of the rope, the pipe edge, or the manner of the pipe's suspension, since it was twenty feet above him.

█ Plaintiff was injured while at the location, in the position and performing the function directed by Farquer. He neither knew nor had reason to know that he was being directed into a hazardous position. Farquer was known to the plaintiff as an experienced man in a responsible supervisory post and plaintiff did nothing which was unbidden, proscribed, or beyond his instructions. Under these circumstances the questions of plaintiff's contributory negligence and of assumption of risk were for the jury.

(d) *Plaintiff was chargeable with the negligence of a fellow servant.*

The availability of the fellow servant doctrine to Levitt as a defense necessarily presupposes that the negligent actor and the injured plaintiff were fellow servants, that is, servants of the same master. This contention is untenable as (e), below, will disclose.

(e) *Plaintiff's remedy was limited solely to benefits he was entitled to receive under the Pennsylvania Workmen's Compensation Act.*

This contention cannot prevail unless the plaintiff was an employee of Levitt at the time of his injury. Though Levitt strongly urges that plaintiff was its employee in a master-servant relationship as known at common law, the record is replete with evidence to support a contrary finding. Plaintiff testified that he worked for Roadway. Farquer testified that he borrowed plaintiff from Roadway and had previously supervised plaintiff on a sewer-laying job. Levitt's bookkeeper stated that its records showed no evidence of plaintiff's employment. Finally, there is Levitt's own denial that plaintiff was its employee. This denial was in answer to an interrogatory propounded by Farquer. Levitt's answer was: *"The plaintiff Watson was not an employee of Levitt and Sons, Inc., nor was he on the payroll of Levitt and Sons, Inc. * * * This defendant did not employ Watson, has no records as to his employment or who may have paid his salary. This defendant made no reimbursement to anyone for any salary paid to Watson."* With this positive, sworn statement the jury did not disagree.

█ Plaintiff was not a casual employee as defined by the Pennsylvania Workmen's Compensation Act. Under this statute the employment must be casual in point of frequency and regularity *and* not in the regular course of the employer's business: Hauger v. H. W. Walker Co., 277 Pa. 506, 121 A. 200. The jury could properly have found that the construction of this dock was in the regular course of Levitt's business as a large-scale developer.

Levitt contends, alternatively, that plaintiff was a loaned or borrowed servant, and as such under the exclusive coverage of the statute. While Farquer testified as to his authority to procure men from Roadway, his contact with Roadway, and the selection of the men he wanted, the jury evidently rejected this testimony and accepted that of the plaintiff.

Plaintiff stated that he was approached for the first time by a subordinate of Farquer about 3:30 P. M. on the afternoon of the accident; that he and other laborers employed by Roadway were putting their tools away after a day's work when Farquer's representative approached and asked if they would mind going over and giving Farquer a hand in putting up piling. The plaintiff thus quoted the intermediary: *"Mr. Farquer*

*is in trouble putting up the piling* \* \*
*Will you boys volunteer and come in to*
*help him put it down?"* With no knowl-
edge of any details of the dock operation,
plaintiff volunteered to help out on the
piling referred to, anticipating only a
ten or fifteen minute interlude of assist-
ance without compensation.

The plaintiff's testimony negated
any employment relationship. If plain-
tiff, as he testified, went only with the
intent to help out temporarily in a diffi-
cult situation, unmindful of any assent
to employment by Farquer or of remu-
neration for his service no employment
resulted. Harris v. Seiavitch, 336 Pa.
294, 9 A.2d 375.

Pennsylvania has adopted section 332 [1]
of the A.L.I. Restatement of Torts:
Kimble v. Mackintosch Hemphill Co.,
359 Pa. 461, 59 A.2d 68. Comment (a)
thereunder explains that there are two
classes of business visitors. One of the
classes includes persons who are invited
or permitted to come upon the land for a
purpose directly or indirectly connected
with the business which the possessor
conducts thereon. This class applies to
plaintiff with particularity.

That Commonwealth has also adopted
section 343 [2] of the Restatement defin-
ing the liability of a possessor of land
to a business visitor: Ambrose v. Moffat
Coal Co., 358 Pa. 465, 58 A.2d 20; Mo-
gren v. Gadonas, 358 Pa. 507, 58 A.2d
150; Engle v. Reider, 366 Pa. 411, 77
A.2d 621; Lanni v. Pennsylvania Rail-
road Co., 371 Pa. 106, 88 A.2d 887; Mil-
ler v. Hickey, 368 Pa. 317, 81 A.2d 910;
Cooper v. Heintz Mfg. Co., 385 Pa. 296,
122 A.2d 699.

This record was adequate to sup-
port a finding by the jury that, as re-
spected Levitt, the plaintiff occupied the
same position as a business visitor on
Levitt's land at the site of the dock con-
struction and was injured as the proxi-
mate result of the negligence of Levitt's
employee.

### Order

Accordingly, this 27 day of December
1956, the motions of Levitt & Sons, Inc.
are denied and the judgment in favor of
the plaintiff against that defendant is
allowed to stand.

---

1. This section provides: "A business vis-
itor is a person who is invited or per-
mitted to enter or remain on land in the
possession of another for a purpose di-
rectly or indirectly connected with busi-
ness dealings between them."

2. "A possessor of land is subject to lia-
bility for bodily harm caused to business
visitors by a natural or artificial condi-
tion thereon if, but only if, he (a) knows,
or by the exercise of reasonable care
could discover, the condition which, if
known to him, he should realize as in-
volving an unreasonable risk to them,
and (b) has no reason to believe that
they will discover the condition or realize
the risk involved therein, and (c) invites
or permits them to enter or remain upon
the land without exercising reasonable
care (i) to make the condition reasonably
safe, \* \* \*"