OPINION OF THE COURT
CHAGARES, Circuit Judge.
Almaz Tameru and Girma Tameru, husband and wife, appeal from the District Court’s grant of summary judgment to W-Franklin, L.P., doing business as Sheraton Philadelphia City Center (the “hotel”). We will affirm.
I.
Because we write solely for the benefit of the parties, we will only briefly summarize the essential facts.
Plaintiff Almaz Tameru worked as a cashier in the parking garage housed in the same building as the hotel. On February 1, 2005, shortly after beginning her shift, she left the parking garage and entered the hotel to obtain a cup of coffee. On her way out of the hotel, after descending two or three steps, she slipped and fell. After she fell, she saw a patch of ice with a skid mark where she had slipped. Before she slipped, she had noticed that the ground was wet, but she had not seen any ice. She also noticed snow and ice on and around the roads during her drive in to work, as well as on the sidewalk area near the parking garage.
A hotel security guard, Cabell Brown, responded to the incident. He prepared an incident report stating that “entire pavement area” where Mrs. Tameru fell was “wet” but “was not icy.” App. 157. Another report indicated that Brown was contacted about Mrs. Tameru’s incident at 10:46 p.m. App. 159 (“Security Activity Report”). This report indicated that he had “[tjoured outer perimeter of Hotel” and “[sjpot-checked PORT area”[1] three times at 9:17 p.m. App. 159; see also App. 160 (“Basic Security Checklist” confirming that the tour of outer perimeter, including the front port, was completed at 9:17 p.m.). Brown testified that if he had observed a dangerous or hazardous condition during this inspection, including any ice in the entryway to the hotel, he would have noted the condition in the security log.
The hotel’s Director of Security testified that if any security personnel or other hotel staff members report ice or snow conditions, the snow would be removed and the ground salted. No salt had been applied to the area where Mrs. Tameru fell. The Director of Security admitted that “black ice” may form if water drops below a certain temperature, App. 394, but *739 he testified that he had never seen ice in that area of the hotel, which he described as located under a protective overhang and near the entrance to the hotel. App. 396.
A meteorologist retained by plaintiffs prepared a report concluding that the weather conditions at the time of Mrs. Tameru’s fall were “consistent” with the “presence of black ice.” App. 178 (emphasis in original). He further opined that “[biased upon the testimony of Cabell Brown, the area he identified as being wet, would have been icy based upon the prevailing weather conditions.” Id. Analyzing the temperature data for the day in question, he stated that the temperature in the area “cooled to the freezing point of water (i.e., 32°) by 8:00 p.m.,” and that “[a]ny meltwater that formed earlier in the day from the melting of snow and ice ... began to freeze at this time.” App. 175. The temperature was reported to be 34 degrees at 7:00 p.m., 32 degrees at 8:00 p.m., 32 degrees at 9:00 p.m., 31 degrees at 10:00 p.m., and 30 degrees at 11:00 p.m. App. 176. “The temperature remained below freezing through midnight,” and thus he concluded that any melted water would be expected to remain frozen. App. 175.
Plaintiffs commenced this action in the Philadelphia County Court of Common Pleas, and the original defendants[2] removed the case to federal court. The hotel moved for summary judgment, and on September 11, 2008, 2008 WL 4272637, the District Court granted the motion. The District Court determined that plaintiffs had failed to produce evidence that the hotel had actual or constructive notice of the condition that caused plaintiffs’ alleged injuries.
II.
The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1332(a) & 1441(a), and this Court has jurisdiction pursuant to. 28 U.S.C. § 1291.
This Court reviews the District Court’s grant of summary judgment de novo, applying the same standard that the District Court was obligated to apply. Gonzalez v. AMR, 549 F.3d 219, 223 (3d Cir.2008). “Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.” Id. (citation omitted). See Fed.R.Civ.P. 56(c). On summary judgment, “we must view the facts in the light most favorable to the non-moving party, and draw all reasonable inferences therefrom in that party’s favor.” New Jersey Transit Corp. v. Harsco Corp., 497 F.3d 323, 326 (3d Cir.2007) (citation omitted).
III.
“The mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence.” Swift v. Northeastern Hospital of Philadelphia, 456 Pa.Super. 330, 690 A.2d 719, 722 (1997). To establish a negligence claim, a plaintiff must prove “four elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages.” Id. Under section 343 of the Restatement (Second) of Torts, which in Pennsylvania defines the duty that a possessor of property owes to a business invitee, a possessor of property is only liable for injuries to a patron caused by a dangerous condition on the premises if he “knows of or reasonably should have known of the condition.” Swift, 690 A.2d at 722 (citing Blackman v. Federal Realty Inv. Trust, 444 Pa.Super. 411, 664 A.2d 139, 142 (1995)). Therefore, an “invitee *740 must prove either the [defendant] had a hand in creating the harmful condition, or [it] had actual or constructive notice of such condition.” Id. (citing Moultrey v. Great A & P Tea Co., 281 Pa.Super. 525, 422 A.2d 593, 598 (Pa.1980)).
Without any evidence that the ice was observable for any significant period of time prior to the accident, a jury may not reasonably infer that the hotel had constructive notice of the hazardous condition. See Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.2001) (“Circumstantial evidence that a substance was left on the floor for an inordinate period of time can be enough to constitute negligence,” but plaintiffs failure to present evidence that the condition lasted “for some minimum amount of time before the accident” justified granting summary judgment for the defendant); Gales v. United States, 617 F.Supp. 42, 44 (W.D.Pa.1985) (affirming summary judgment because “Plaintiff has not produced any evidence indicating the length of the time that the liquid was on the floor prior to the Plaintiffs fall”) (citing Lanni v. Pennsylvania R.R. Co., 371 Pa. 106, 88 A.2d 887 (1952)). Even when the “general weather conditions” are such that a hazardous condition may materialize, constructive notice cannot be inferred from this mere possibility. Sheridan v. Horn & Hardart Baking Co., 366 Pa. 485, 77 A.2d 362, (1951); accord Parker v. McCrory Stores Corp., 376 Pa. 122, 101 A.2d 377, 377-78 (1954) (department store cannot be expected to inspect “every minute or every five minutes every entrance, aisle, corridor and stairway in the store, in order to instantly clean up and eliminate every wet or possibly slippery, or possibly dangerous condition and every puddle which might be found to exist anywhere in the store”). Weather conditions can only support an inference of actual or constructive notice of a hazardous condition when coupled with evidence that the defendant had knowledge of both the weather condition at the time of the accident and the fact that the weather condition created hazards on the premises. See Cohen v. Food Fair Stores, Inc., 190 Pa.Super. 620, 155 A.2d 441, 442-43 (1959) (distinguishing Parker and Sheridan based on testimony from a store manager that “he knew of the dangerous condition of the vestibule floor on rainy days”).
The evidence does not support a reasonable inference of actual or constructive notice in this case. Viewed in the light most favorable to plaintiffs, the most the evidence establishes is that the temperature had fallen enough for ice to form in the area near the hotel and that, by the time of Mrs. Tameru’s fall, ice had in fact formed. None of the evidence indicates that the defendant knew or should have known that ice had actually formed in the entryway to the hotel at the time the accident occurred. The security manager testified that he had never before observed ice in the covered entryway area, and plaintiffs did not produce any evidence suggesting that the hotel should have been aware that icy conditions developed in this area. During the routine security sweep of the premises conducted at 9:17 p.m., the security guard spot-checked the entryway area and did not detect any ice. The mere fact that the temperature had dropped to 31 degrees by 10:00 p.m. does not support a reasonable inference that the hotel should have known that ice had formed in the location where Mrs. Tameru fell. Likewise, Mrs. Tameru’s observation of ice on the ground after she fell does not support a reasonable inference that the hotel knew, or should have known, about the ice prior to her fall. Despite the meteorological evidence that the temperature had fallen below freezing in the hours before the accident, there was no evidence that ice had existed for any length of time before Mrs. Tameru observed it. Because plaintiffs failed to produce evidence of actual or *741 constructive notice, the district court properly granted summary judgment for the defendant.
IV.
For the foregoing reasons, we will affirm the judgment of the District Court.

. The port is the area near the main entry to the hotel. See App. 369.

. Plaintiffs originally named a number of defendants, but the parties stipulated to the dismissal of these defendants and the addition of W-Franklin, L.P. as the sole defendant.