**WAYLANDER–PETERSON CO. v. GREAT NORTHERN RY. CO.**

No. 14674.

United States Court of Appeals
Eighth Circuit.

Jan. 20, 1953.

---

410

Wright W. Brooks, Minneapolis, Minn. (Faegre & Benson and Paul J. McGough, Minneapolis, Minn., on the brief), for appellant.

W. P. Westphal, St. Paul, Minn. (Edwin C. Matthias, Anthony Kane and J. H. Mulally, St. Paul, Minn., on the brief), for appellee.

Before GARDNER, Chief Judge, and JOHNSEN and COLLET, Circuit Judges.

GARDNER, Chief Judge.

As initiated this was an action brought by James Lawrence against the Great Northern Railway Company to recover damages for personal injuries. The action was brought under the provisions of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. It was alleged that Lawrence, at the time of receiving his injuries, was in the employ of the Great Northern Railway Company as a railway switch foreman; that as such it was his duty to work in and around the tracks, yards and switches of the Railway Company at Minneapolis, Minnesota; that on the 1st day of March, 1950, and for many years prior thereto the Railway Company had maintained in the downtown business section of Minneapolis, Minnesota, railway yards, consisting of the usual main, side, lead, switch and such other tracks as are ordinarily used by railway companies in their business as common carriers of freight and passengers; that during the time here involved there was a bridge commonly known as the Seventh Street Bridge which crossed over and above the railway yards and which carries both vehicular and pedestrian traffic on one of the principal thoroughfares of the city of Minneapolis; that at and prior to March 1, 1950, said bridge was being reconstructed under contract between the Railway Company and various contractors; that said contracts prohibited the contractors from placing, permitting or allowing any timbers or other objects or materials on said bridge or its appurtenances which might fall therefrom onto said yards and tracks or which would endanger the safety of railway employees whose duties required them in the scope and course of their employment in said yards to work underneath and below said bridge; that under the provisions of the Federal Employers' Liability Act the said contractors, their agents and employees, were in effect the agents and employees of the Railway Company and that by reason thereof the negligent acts of each and all of said persons and employees were chargeable and imputable to the Railway Company; that on the 1st day of March, 1950, while Lawrence, acting within the scope of his employment, was engaged in certain switching operations at a point near the so-called No. 6 switchstand, which was located directly under the Seventh Street Bridge, a large timber was caused to fall from such Seventh Street Bridge, striking Lawrence on the head and body and inflicting serious injuries. It was charged that the Railway Company was negligent in having failed to exercise ordinary care to furnish Lawrence a safe place in which to work. The complaint contained other charges of negligence which we think are not here important.

The Railway Company answered, admitting that Lawrence had been injured at the time and place alleged by coming in contact with a timber that had fallen from the bridge but denied negligence and pleaded contributory negligence on behalf of Lawrence.

The Railway Company, on leave of court, under Rule 14 of the Rules of Civil Procedure, 28 U.S.C.A., served a third-party complaint upon Waylander-Peterson Company, alleging that said company had negligently left a timber near the edge of the bridge in such position that it fell off, struck

and injured Lawrence. It asked for indemnity from Waylander-Peterson Company for all sums that Lawrence might recover against the Railway Company. In answer to the third-party complaint the Waylander-Peterson Company denied that Lawrence was injured by reason of any negligence on its part and set up as an affirmative defense that Lawrence's injuries were caused by his own contributory negligence. It also alleged that the court did not have jurisdiction of the third-party proceedings because all parties were residents of Minnesota and hence there was no diversity of citizenship.

The Waylander-Peterson Company moved to dismiss the third-party proceedings on two grounds: first, because there was no diversity of citizenship, and second, because the third-party proceedings involved issues and rules of law which were so confusingly different from those involved in Lawrence's action against the Railway Company that its rights were in danger of being prejudiced. This motion was denied, D.C., 98 F. Supp. 746. The Waylander-Peterson Company then moved under Rule 42 of the Rules of Civil Procedure for a separate trial of the issues in the third-party proceedings. This motion was also denied.

The action was tried before the court and a jury and Waylander-Peterson Company appeared by counsel and actively participated in the trial of the action. Both the Railway Company and the Waylander-Peterson Company, at the close of all the evidence, interposed separate motions for a directed verdict, which motions were denied and the cause was submitted to the jury upon instructions and certain interrogatories. The interrogatories submitted to the jury were as follows: (1) Did a piece of timber fall from the Seventh Street Bridge at or near the fifth pier thereof and strike or come in contact with plaintiff, causing the injuries from which he is suffering? (2) Has the defendant, Great Northern Railway Company, established by the greater weight of the evidence that the timber which fell from the bridge came in contact with the plaintiff as a proximate result of the negligence of the Waylander-Peterson Company? The jury answered both of these interrogatories in the affirmative and returned a verdict in favor of Lawrence and against the Railway Company for $27,500. Following the return of the verdict the Railway Company moved for findings and conclusions in its favor to the effect that its negligence toward Lawrence was merely secondary or passive, whereas the negligence of Waylander-Peterson Company toward Lawrence was primary and active. Over objection of the Waylander-Peterson Company, the court entered the proposed findings in favor of the Railway Company and concluded that the Railway Company was entitled to judgment against the Waylander-Peterson Company for $27,500, the amount of the judgment in favor of Lawrence, together with costs and judgment was entered accordingly from which the Waylander-Peterson Company prosecutes this appeal.

In seeking reversal appellant urges: (1) that the Railway Company could not recover from it without first establishing that it was liable in negligence to Lawrence; (2) that it was entitled to judgment as a matter of law because there was no showing of any act of negligence on its part; (3) the court erred in not submitting to the jury the issue of whether Lawrence was guilty of contributory negligence; (4) the court erred in instructing the jury as to the applicability of the doctrine of res ipsa loquitur; (5) the court erred in denying appellant's motion to dismiss the third-party proceedings because the trial would involve confusing similar but different issues as compared with the principal action; (6) the court erred in denying appellant's motion for a separate trial of the third-party issues; (7) the court erred in refusing to dismiss the third-party proceedings on jurisdictional grounds because there was no diversity of citizenship; (8) the court erred in holding the Railway Company entitled to more than contribution to the extent of one-half of the verdict.

Viewing the evidence as we must in a light most favorable to the prevailing party, we think the jury, if entitled to apply the doctrine of res ipsa loquitur, was warranted in finding as it did in its answers to the interrogatories submitted to it, that

a piece of timber fell from the Seventh Street Bridge and struck Lawrence, causing the injuries from which he is suffering. We think too that so viewed the evidence warranted the jury in finding as it did that the Railway Company established by the greater weight of the evidence that the timber which fell from the bridge and struck Lawrence was the proximate result of negligence of Waylander-Peterson Company. It is, however, urged that the facts and circumstances did not warrant the Court in permitting the jury to apply the res ipsa loquitur doctrine.

Timbers, such as the one which struck plaintiff, were seen on the bridge by plaintiff and four other railway employees who testified at the trial. One of these witnesses testified that shortly prior to the accident he saw similar timbers on the top of the bridge immediately over the place where Lawrence was injured. Another witness testified that on the very day of the accident he noticed timbers on the top of the bridge like the one which struck Lawrence. The Railway Company's civil engineer, Kelly, whose duty it was to watch the building of the bridge for any interference it might have with the Company's trains, testified that many times prior to the time in question he saw timbers similar to the one which struck Lawrence being used in connection with the construction of the bridge; that these timbers were used in connection with the building of the forms for the concrete piers and that the steel men used them for spacing between the girders. The steel men were the employees of appellant. The jury might reasonably have found as it did that there were hard wood bridge timbers such as struck Lawrence being used during the rebuilding of this bridge. There was also testimony that Lawrence passed over the place where he was later injured some fifteen minutes before the accident. Another employee testified that he went along this track seven or eight times on the day of the accident prior to its occurrence; that the last time he passed over this part of the track was some thirty to forty minutes prior to the time of the accident. Other witnesses testified that within a few minutes of the accident there were no timbers or obstructions at the place where the accident occurred.

On the day of the accident appellant had a crew of seven men working around pier 5 until 4:30 in the afternoon. This pier 5 was close to tracks 5 and 6 and the girders which were being installed by appellant were immediately above these tracks and above the point where the timber was found by witnesses following the accident. There was evidence from which the jury might well have believed that appellant's employees were in the exclusive possession and control of that part of the bridge from which the timber must have fallen. The court did not tell the jury as a matter of law that the doctrine of res ipsa loquitur was applicable but said in this connection:

"That doctrine is simply one that may be applied by a jury in light of all the facts and circumstances in order to determine whether or not the happening of the accident is sufficient to create an inference of negligence. Now, that doctrine that you would be justified in applying to the facts, can only be applied under certain circumstances. The law says it may be applied if, for instance, this bridge or the portion of the bridge above the fifth pier and its appurtenances were under the sole and exclusive control of the Waylander-Peterson Company. That is a question of fact, of course, as to whether or not on March 1, 1950, this fifth pier was under the sole and exclusive control of the Waylander-Peterson Company. Second, was this accident of a kind that it would not have occurred had those in charge of this portion of the bridge exercised due care? Third, are the means of knowing what caused the timber to fall, if it did fall, exclusively and entirely within the knowledge and under the control of the Waylander-Peterson Company?

"Now, I say if these premises are established by the evidence then the jury may draw an inference from the facts and circumstances under which this accident happened that the one in control and exclusive control of this bridge is

guilty of negligence unless there is other evidence that overcomes that inference and rebuts, so to speak, any inference of negligence that may be drawn merely by the way the accident happened."

The jury could have found from the testimony that a timber similar to . 's that struck plaintiff was on the bridge . the track where Lawrence was injur nd that such timber would not have fallen unless it had been negligently left at a point where it would fall on a day when there was but little wind. There were no trains passing either way on these tracks from 3:00 P.M. to the time of the accident. Appellant's crew had exclusive control of that part of the bridge from which the timber fell up to 4:30 P.M. and the jury was warranted in finding that the timber was negligently left in such a way that it fell from the bridge. The doctrine of res ipsa loquitur is that when a thing which has caused an injury is shown to be under the exclusive management of the person charged with negligence and the accident is such as in the ordinary course of things would not happen if those who had the control used proper care, the accident itself affords reasonable evidence in the absence of explanation by the person in control that it arose from want of care. Peterson v. Minnesota Power & Light Co., 207 Minn. 387, 291 N. W. 705; Ryder v. Kinsey, 62 Minn. 85, 64 N.W. 94, 34 L.R.A. 557. In Peterson v. Minnesota Power & Light Co., supra, the Supreme Court of Minnesota in applying the doctrine said [207 Minn. 387, 291 N.W. 707]:

"Control 'is not necessarily a control exercised at the time of the injury, but may be one exercised at the time of the negligent act which subsequently resulted in an injury.' 3 Cooley, Torts, 4th Ed., section 480, p. 386. Necessarily this is so for in many instances defendant's failure to meet the standard of a reasonable man will not manifest itself until a subsequent period; for instance, where a foreign substance is negligently permitted to get into a beverage bottled by defendant."

We conclude that there was no error in denying appellant's motion for a directed verdict nor was there error in the court's instruction with reference to the applicability of the doctrine of res ipsa loquitur.

■ It is urged that the court erred in refusing to submit to the jury the question of Lawrence's contributory negligence. The basis for this claim is that Lawrence is said to have stated that he stumbled over the timber and this it is claimed was evidence of negligence on his part. It is observed as a physical fact that after Lawrence fell to the ground the timber was found lying across his legs. Just how the timber, which weighed in the vicinity of 100 or 125 pounds, could have landed on top of Lawrence had he merely stumbled over it is not explained. The injuries were such that they could not have been caused by a mere fall but they were shown positively to have been caused by a blow coming from above. But even had the timber been lying on the ground it does not follow that plaintiff failed to use reasonable care for his own safety. He had gone over this place where the accident occurred ten to fifteen minutes before the accident and there was no timber there then. He was not required to anticipate that between the time that he passed over the track and the time of his accident there might be a timber lying on the track. There was no evidence of any lack of caution or care on his part and no basis for an instruction on contributory negligence.

■ It is argued that the court erred in denying appellant's motion for a new trial but such motion is addressed to the discretion of the court and will not be reviewed on appeal. Yellow Cab Co. v. Earle, 8 Cir., 275 F. 928; Payne v. Daugherty, 8 Cir., 283 F. 353; Paine v. St. Paul Union Stockyards Co., 8 Cir., 28 F.2d 463; Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439.

■ It is contended that the court erred in denying appellant's motion to dismiss the third-party proceedings. This motion was based upon the ground that the third-party proceedings created trial complications prejudicial to appellant. The proceeding

was based on Rule 14 of the Federal Rules of Civil Procedure. Appellant, as has been observed, participated in the trial of the main action and was given full opportunity to examine and cross-examine witnesses and to interpose objections. But it is said that it was prejudiced among other reasons because contributory negligence was not a defense to an action brought under the Federal Employers' Liability Act and hence not an available defense to the Railway Company, but was available only in mitigation of damages, whereas it was an available defense for appellant. Appellant was at liberty to produce any and all available testimony bearing upon the question of Lawrence's contributory negligence and as we have already said, there was no evidence produced sufficient to make that an issue so that it could not have been prejudiced so far as this question was concerned. In the case of United States v. Yellow Cab Company, 340 U.S. 543, 71 S.Ct. 399, 406, 95 L.Ed. 523, plaintiffs, who were passengers of the Yellow Cab Company, sued for injuries suffered by them because of a collision with a United States mail truck. By leave of court the Yellow Cab Company impleaded the United States as a third-party defendant and charged that the negligence of the mail truck driver rendered the United States liable for the injuries suffered by plaintiffs. The United States moved for a dismissal as a third-party defendant on the ground that the Federal Tort Claims Act did not authorize suits against it on derivative claims. The motion was denied by the trial court. In the course of the opinion of the Supreme Court it was said:

"Once we have concluded that the Federal Tort Claims Act covers an action for contribution due a tort-feasor, we should not, by refinement of construction, limit that consent to cases where the procedure is by separate action and deny it where the same relief is sought in a third-party action. * *

"The Government suggests that difficult procedural problems may arise in other cases if a waiver of immunity is held to exist in these cases. For example, the Act requires claims against the United States to be tried without a jury and, although a jury was not insisted upon in the instant cases, the Seventh Amendment to the Constitution preserves to private individuals their right of trial by jury on such claims in a federal court. The Government argues that the Act is not sufficiently specific to permit two such different modes of trial to arise in the same case.

"Such difficulties are not insurmountable. If, for example, a jury had been demanded in the Yellow Cab case, the decision of jury and nonjury issues could have been handled in a manner comparable to that used when issues of law are tried to a jury and issues of an equitable nature in the same case are tried by the court alone. If special circumstances had demonstrated the inadvisability, in the first instance, of impleading the United States as a third-party defendant, the leave of court required by Rule 14 could have been denied. If, at a later stage, the situation had called for a separation of the claims, the court could have ordered their separate trial. Fed.Rules Civ. Proc. 42(b). The availability of third-party procedure is intended to facilitate, not to preclude, the trial of multiple claims which otherwise would be triable only in separate proceedings. The possibility of such procedural difficulties is not sufficient ground for so limiting the scope of the Act as to preclude its application to all cases of contribution or even to all cases of contribution arising under third-party practice. If the Act develops unanticipated complications, Congress can then meet them to such extent as it may desire to fit the demonstrated needs."

What is said by the Supreme Court of Minnesota in Doyle v. St. Paul Union Depot Co., 134 Minn. 461, 159 N.W. 1081, 1082, seems peculiarly apposite here. It is there said:

"It is apparent that the ground of liability of the two defendants is different. One may be liable or both may be liable. The liability of the depot company is dependent upon the Federal Employers' Liability Act; that of the railroad

company upon the common law. There is nothing significant in this. In the Mayberry [v. N. P. R. Co.] Case [100 Minn. 79, 110 N.W. 356, 12 L.R.A.,N.S., 675] the liability of one defendant rested upon a statute and that of the other on the common law. The same is true of the Jackson Case [Jackson v. Orth Lumber Co., 121 Minn. 461, 141 N.W. 518]. Contributory negligence is a complete defense to the railroad company. It is only a partial defense to the depot company. This is not of consequence. In the Flaherty [v. M. & St. L. R. Co.] Case [39 Minn. 328, 40 N.W. 160, 1 L.R.A. 680], one defendant was liable if it failed to exercise ordinary care and the other was liable if it failed to exercise the highest degree of care consistent with the discharge of of its duties as a carrier. That the measure and amount of recovery against different defendants may be different, and in supposable cases they might be, is not important. If the defendants are liable in different amounts their different liabilities can be found and declared. See Rauma v. Lamont, 82 Minn. 477, 85 N.W. 236. Such considerations as those mentioned suggest that the presentation of a case to the jury may in particular cases be more difficult than is usual but do not affect the propriety of the joinder or the right of recovery."

In the instant case the lower court followed these precedents and followed, we think, a commendable course of procedure.

It is also urged that the court erred in refusing to grant a separate trial on the third-party issue. The court submitted two interrogatories to the jury bearing on the question of fact involved and made findings of fact and conclusions of law applicable only to the issue between the third-party plaintiff and the third-party defendant. The very purpose of Rule 14, Federal Rules of Civil Procedure, was to avoid circuity of action and multiplicity of suits. Blair v. Cleveland Twist Drill Co., 7 Cir., 197 F.2d 842. Appellant's contention in this regard is wholly without merit.

■ The third-party plaintiff and the third-party defendant are corporations, each of which is organized under the laws of the State of Minnesota and hence as to these parties there is no diversity of citizenship, and it is urged that the court was without jurisdiction to determine the issues here involved. The court had jurisdiction of the principal action and that jurisdiction was not ousted, we think, by bringing in the third-party defendant. The governing principle is stated in Barron and Holtzoff, Federal Practice and Procedure, Sec. 424, as follows:

> "Clearly, a third-party claim by a defendant that a third person is liable to him for all or part of the claim in suit is so closely involved with the subject matter of the action as to be regarded as ancillary thereto. Thus, if the court has jurisdiction of the principal action, it needs no independent grounds of jurisdiction to entertain and determine the defendant's third-party claim. The question ordinarily arises in diversity of citizenship cases. Where the necessary diversity exists between plaintiff and defendant, there is no necessity that such diversity should exist with respect to the third-party defendant. In other words, if the third-party claim is ancillary and incidental to the principal action, independent grounds of jurisdiction need not exist."

This text is supported by the trend of modern authority. Kelly v. Pennsylvania R. Co., D.C.Pa., 7 F.R.D. 524; Moncrief v. Pennsylvania R. Co., D.C.Pa., 73 F.Supp. 815; Williams v. Keyes, 5 Cir., 125 F.2d 208; New Amsterdam Cas. Co. v. Soileau, 5 Cir., 167 F.2d 767. The court, we think, had jurisdiction and properly refused to dismiss the third-party proceedings.

■ It is finally contended that the Railway Company in any event was not entitled to more than contribution to the extent of one-half of the verdict. Under the laws of Minnesota the right of contribution exists between joint tort-feasors and it is argued that appellant and appellee being joint tort-feasors, contribution only was recoverable from appellant. The same con-

tention was urged by appellant in the lower court. In considering this contention Judge Nordbye in a memorandum opinion said Lawrence v. Great Northern Ry. Co., D.C., 109 F.Supp. 555:

"The third party defendant urges, therefore, that under the Minnesota law the Great Northern Railway Company at most is only entitled to recover one-half of the amount which the jury returned in favor of Lawrence against the railroad company. Apparently it is the third party defendant's position that, in view of the Minnesota rule of contribution, Minnesota does not recognize any recovery as between joint tort-feasors other than contribution except in case of an express contract of indemnity. But the Minnesota rule of contribution as between joint tort-feasors does not negative the principle of indemnity on other grounds. That is, where the parties are not in *pari delicto* and the injury results from the acts of one whose negligence is the primary, dominant cause of the injury, and if such negligence exposes another to liability, the former is liable to the latter in the full amount of the damages incurred by such act. The teachings of Minneapolis Mill Co. v. Wheeler, 31 Minn. 121, 16 N.W. 698, and Fidelity & Casualty Co. v. Northwestern Telephone Exchange Co., 140 Minn. 229, 167 N.W. 800, fully sustain this view. Here, these parties were not in *pari delicto*. The railway company had no control over the construction of this bridge or of the workmen who were employed thereon. The railway company was required to operate its trains under the bridge and to direct its trainmen to perform their duties in and about the bridge. The repeated instances of timbers and debris falling from the bridge, which rendered the railway company liable under the Federal Employers' Liability Act, was a condition which the railway company did not create. Its liability arose because of the non-delegable duty which rested upon it to exercise reasonable care to furnish Lawrence a safe place to work. Any negligence attributed to it so as to render it liable to Lawrence arose by the wrongdoing of those in charge of the construction of this bridge. The primary duty rested upon Waylander-Peterson Company to perform its work on the bridge so as not to endanger the workmen who were required to work in proximity thereto. Its neglect was the primary, active cause of Lawrence's injuries. The railroad company's negligence, as between the parties, was secondary and passive."

We are in entire accord with the trial court's views on this question. The Minnesota decisions cited by Judge Nordbye clearly sustain his decision. The parties here were not in pari delicto. Restatement on Restitution, Secs. 95, 95a. See, also: Lowell v. Boston & Lowell Ry. Co., Mass., 23 Pick. 24; Union Stockyards Co. v. Chicago B. & Q. R. Co., 196 U.S. 217, 25 S.Ct. 226, 49 L.Ed. 453; City of Astoria v. Astoria & C. R. Co., 67 Or. 538, 136 P. 645, 49 L.R.A., N.S., 404.

We have considered all the other contentions of appellant but think they are without merit. The judgment appealed from is therefore affirmed.