**FT. WORTH & DENVER RAILWAY COMPANY, Appellant,**

v.

**Claude THREADGILL and E. J. Haymes and Nunn Electric Supply Company, Appellees.**

**No. 15494.**

United States Court of Appeals
Fifth Circuit.

Dec. 16, 1955.

Rehearing Denied Jan. 17, 1956.

Charles B. Jones, E. L. Klett, Lubbock, Tex., Seth Barwise, Fort Worth, Tex., Klett, Evans, Trout & Jones, Lubbock, Tex., for appellant.

J. Orville Smith, Ted Odom, Bob Huff, Lubbock, Tex., Huff & Splawn, Lubbock, Tex., for appellee Threadgill.

Crenshaw, Dupree & Milam, Lubbock, Tex., for appellees E. J. Haymes and Nunn Electric Supply Co.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This suit arose out of an accident which occurred at the grade crossing of Farm Road No. 400 and the appellant railroad's line in Lubbock County, Texas. On Friday afternoon, October 9, 1953, the appellee Threadgill and two other section hands and a foreman of the railroad were sent to a point about 400 yards beyond the crossing to build a sand barrier out of crossties. When they finished with this job, and were preparing to leave it, the foreman ordered the men to run the motor car and push car on which they had brought the ties back to the grade crossing, where they could be turned around. Ordinarily, this is done on which is called a setoff, a low platform made by placing several pieces of lumber parallel to and in between the rails and for two or three feet to one side or the other of them. However, any

firm ground nearly level with the tracks will suffice, and the foreman elected to use the highway shoulder, although there was a setoff about 700 yards from where the men had just finished working, and in the direction in which they were returning.

On the shoulder, the men first set the push car off, and then turned the motor car around by lifting up the back end and swinging it around. In order to set the push car back on the rails behind the motor car, it was necessary to move the motor car up on the highway, and this was done. The push car was then set back on the rails, and Threadgill began re-coupling the two cars.

With the heavy lifting and pushing done, the foreman sent the other two employees out to flag traffic. They did not get very far [1] before a car approached from the north. The driver apparently saw the workmen, for the car slowed down. The appellee Haymes soon followed, however, going at a speed in excess of sixty miles an hour. He did not see either the workers or the motor car and push car until he swung his automobile out to pass the first automobile. By this time, it was difficult to stop his car short of the crossing. He applied his brakes, skidding off the road, and then took his foot off the brake in order to get back on the road and avoid hitting a fence. At this point the flagman and the foreman both jumped out of the way, the foreman shouting to Threadgill to look out. Threadgill, who was engrossed in putting the pin back in the coupling, saw or heard nothing until Haymes' automobile crashed into the motor car and push car, throwing him to the pavement and causing him severe injuries.

He brought suit thereafter against the railroad under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., and the railroad impleaded Haymes and his employer, the Nunn Electric Supply Co. The case was tried to a jury, whose verdict was in the form of answers to special questions propounded to it.[2]

1. The flagman testified that he went "[a]bout 20 feet" down the pavement from the railroad tracks to stop traffic. Haymes testified that before he collided with the motor car, the flagman was standing next to it, "possibly one or two" feet from it, "just real close."

2. The special questions and the answers thereto were as follows:
"Special Issue No. 1: Do you, from a preponderance of the evidence, excepting and without taking into consideration at all at this time the statement which the witness Finnegan says was made to him by the defendant Haymes, find against the contention that the said defendant was driving his Oldsmobile at a rate of speed faster than sixty (60) miles per hour as he neared the railroad crossing in question, where the collision occurred on October 9, 1953? Answer: No.
"Special Issue No. 2: Do you, from a preponderance of the evidence, excepting and without taking into consideration at all the statement which the witness Finnegan says was made to him by the defendant Haymes, find against the contention that said defendant Haymes was driving his Oldsmobile faster than a person of ordinary prudence would have done under all of the surrounding circumstances as he neared the railroad crossing in question where the collision occurred on October 9, 1953? Answer: (No answer)
"Special Issue No. 3: Do you, from a preponderance of the evidence, find against the contention that any such negligent speed of the defendant Haymes was the sole proximate cause of the ensuing collision at the railroad crossing and the injuries sustained by the plaintiff Threadgill? Answer: Yes.
"Special Issue No. 4: Do you find, from a preponderance of the evidence, that the section foreman failed to keep as good watch, as would have been done under all the circumstances by a person of ordinary prudence, for oncoming road traffic moving toward the railroad crossing immediately before the collision in question? Answer: Yes.
"Special Issue No. 5: Do you find, from a preponderance of the evidence, that any such negligent failure of the section foreman to keep a proper lookout for said road traffic was a proximate cause of the injuries sustained by the plaintiff? Answer: Yes.
"Special Issue No. 6: Do you find, from

The jury found that Haymes at the time of the accident was driving his automobile in excess of sixty miles an hour, that he was driving his automobile faster than a person of ordinary prudence would have done, and that such negligent operation was a proximate cause, but not the sole proximate cause, of the collision. It found that the section foreman failed to keep as good a watch as would have been done under all the circumstances by a person of ordinary prudence, and that such negligent failure of the section foreman to keep a proper lookout for road traffic was a proximate cause of the plaintiff's injuries. It also found that the plaintiff Threadgill failed to keep such lookout for his own safety as would have been observed by a person of ordinary prudence under all the attending circumstances, and that such negligence was a proximate cause of the injuries he sustained in the collision.

On the question of damages, the court instructed the jury that in a case of contributory negligence the plaintiff's recovery against the railroad would not be barred but would be reduced to the degree that his negligence contributed to his injuries. It also instructed that the rights between Threadgill and Haymes and the Nunn Electric Supply Co. were governed by Texas law, under which the plaintiff's contributory negligence would

a preponderance of the evidence, that in pushing the railroad equipment by hand, instead of using the power of the motor car to cross the public roadway, the section foreman was negligent? Answer: No.

"Special Issue No. 7: Do you find, from a preponderance of the evidence, that any such negligence of the section foreman, in the means adopted for moving the railroad equipment, was a proximate cause of the collision in question and the ensuing injuries to the plaintiff? Answer: (No answer)

"Special Issue No. 8: Do you find, from a preponderance of the evidence, that the plaintiff Threadgill failed to keep such lookout for his own safety, as would have been kept by a person of ordinary prudence under all of the attending circumstances, in reference to approaching vehicles on the public road, immediately before the collision in question? Answer: Yes.

"Special Issue No. 9: Do you find, from a preponderance of the evidence, that any such negligence of the plaintiff himself was a proximate cause of the injuries he sustained in the collision? Answer: Yes.

"Special Issue No. 10: Do you find, from a preponderance of the evidence herein, that the defendant Haymes was driving his Oldsmobile at a rate of speed faster than sixty (60) miles per hour as he neared the railroad crossing in question, where the collision occurred on October 9, 1953? Answer: Yes.

"Special Issue No. 11: Do you find from a preponderance of the evidence, that such negligence of said defendant was a proximate cause of the said collision? Answer: Yes.

"Special Issue No. 12: Do you find, from a preponderance of all the evidence herein, that the defendant Haymes was driving his Oldsmobile faster than a person of ordinary prudence would have done under all of the surrounding circumstances as he neared the railroad crossing in question, where the collision occurred? Answer: Yes.

"Special Issue No. 13: Do you find, from a preponderance of the evidence, that any such negligent speed of the said defendant Haymes was a proximate cause of the said collision? Answer: Yes.

"Special Issue No. 14: Do you find, from a preponderance of the evidence, that the plaintiff Threadgill with a lack of ordinary care for his own safety, voluntarily exposed himself to known danger and hazard in the way and place of his work at the time of the collision in question? Answer: No.

"Special Issue No. 15: Do you find from a preponderance of the evidence, that any such negligence of the plaintiff in exposing himself to known danger was a proximate cause of the injuries he sustained in said collision? Answer: (No answer)

"Special Issue No. 16: Do you find, from a preponderance of the evidence, that the railroad equipment was being pushed slowly over the public road by the workmen, instead of being at a standstill, at the time defendant Haymes in his Oldsmobile came into view of the railroad crossing? Answer: No.

"Special Issue No. 17: How much, from a preponderance of the evidence, do you assess as plaintiff's damages from the personal injuries sustained in the collision in question? Answer: $5500.00."

defeat his suit altogether. Under these instructions, and after making the findings noted above, the jury assessed the plaintiff's damages at $5500. The court accordingly entered judgment in plaintiff's favor for this amount plus interest and costs, against the railroad. It decreed that the railroad take nothing by its third party complaint against Haymes and the Nunn Electric Supply Co., and that Haymes and the Nunn Electric Supply Co. take nothing by its counterclaim against the railroad. The railroad appeals.

The contentions of the railroad are twofold: first, that the jury finding that Haymes' negligence was not the sole proximate cause of Threadgill's injuries was erroneous as inconsistent with its other findings and against the weight of the evidence; second, that even if the railroad's liability is admitted, it is nevertheless entitled to indemnity or contribution from Haymes or his employer.

On the first point, it is settled Texas law that questions of causation, like questions regarding the reasonableness of the acts from which damaging results flow, are jury questions, and therefore these jury findings cannot be set aside unless they are so clearly erroneous that reasonable minds could not differ in reaching a different result. City of Amarillo v. Copeland, 5 Cir., 218 F. 2d 49. The railroad argues that its workmen being on the highway was only a condition and not a cause of the accident. This is actually immaterial to the main issue here, for the negligence of the railroad upon which the plaintiff's recovery is based was that of the foreman in failing to keep a proper lookout for road traffic. When both the foreman and the flagman, by keeping a lookout for themselves, were able to escape injury, it is almost a certainty that by the exercise of reasonable care in looking out for Threadgill's welfare as well, they could also have saved him from injury. In rebuttal to this, the railroad contends that the foreman had no duty to provide a lookout for his men, because he had a right to expect that all traffic would stop when it approached them. This contention is buttressed by reference to a Texas statute, Art. 6701d, § 86(d), Vernon's Annotated Civil Statutes, which provides that when a person driving a vehicle approaches a grade crossing, he is required to stop when "[a]n approaching train" —which is required by Art. 6371 to ring a bell and blow a steam whistle when it comes within 80 rods of a crossing— "is plainly visible and is in hazardous proximity to such crossing." Quite aside from the question of whether the motor car and push car were here "plainly visible" within the meaning of the Texas statute, the analogy between this apparatus and a train is, at least under these circumstances, plainly inapposite. The rights and duties imposed upon the railroad must therefore be resolved by the common law of Texas, and we are cited to no authority which holds that when his men are working on a public highway, an employer is under no duty to provide a lookout or warning for traffic. Such a contention is plainly untenable, and the jury finding that the foreman failed to act as a person of ordinary prudence would under the circumstances was properly accepted by the district court.

For its second point, the railroad contends that if it is held liable to Threadgill, it is entitled to indemnity or contribution from its joint tortfeasor, Haymes, or his employer. It is admitted by all parties, however, that by Texas law Threadgill is barred by his own contributory negligence from recovering damages from Haymes. If the Federal Employers' Liability Act had not altered the majority rule which makes contributory negligence a complete bar to recovery,[3] Threadgill's suit against the railroad would also fail. Haymes and the Nunn Electric Supply Co. therefore argue that neither of them should be required to indemnify the railroad for a special liability imposed upon it as a common carrier by reasons of public policy.

3.  45 U.S.C.A. § 53.

▬ The railroad's right to indemnity, or to contribution, which it seeks in the alternative, is determined by state law. Southwestern Greyhound Lines v. Crown Coach, 8 Cir., 178 F.2d 628; Waylander-Peterson Co. v. Great Northern Ry. Co., 8 Cir., 201 F.2d 408, 37 A.L.R. 2d 1399. Under Texas law, the right of one tortfeasor to indemnity from another is not now determinable by the old tests of misfeasance and nonfeasance, but instead turns upon the issue of whether one of the defendants breached a duty of care owed by him to another defendant, in addition to or coexistent with his primary duty owed to the plaintiff. Humble Oil & Refining Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995. Clearly, Haymes breached a duty of care owed to the railroad as well as to all others on the highway when he negligently drove down the highway at an excessive rate of speed. However, the undisputed facts are that the railroad put upon the highway here a dangerous obstruction of which no adequate warning was made. This was a breach of duty to Haymes and all other users of the highway. Where two tortfeasors breach duties of care owed to one another, and the negligence of each contributes to the plaintiff's injuries, Texas law denies them indemnity from one another. Parker v. Leach, Tex.Civ.App., 274 S.W.2d 721.

▬ The railroad argues, however, that if it is not due indemnity from Haymes for a breach of duty owed by him to it, it is at least entitled to contribution from him for a part of the damages caused Threadgill by their combined negligence. Haymes and his employer argue that they should not be deprived of an otherwise good defense, Threadgill's contributory negligence, because that defense is not a full bar to recovery under the federal statute governing the rights of Threadgill and the railroad. Texas law sustains the latter view. Thus, where the passenger in an automobile involved in a collision with another automobile was barred from recovering damages from the driver of the car in which she was riding, because the host driver had not been guilty of gross negligence, it was held that the driver of the second car was not entitled to contribution from the host driver, although he was thereby forced to pay the whole damages for their combined negligence. Patterson v. Tomlinson, Tex.Civ.App., 118 S.W.2d 645. The Texas Court of Civil Appeals said that if it were held otherwise, the policy of the guest statute would be defeated. Patterson v. Tomlinson, Tex.Civ.App., 118 S.W.2d .645, 646. This reasoning applies with equal logic to the policy underlying the Texas rule which makes contributory negligence a complete bar to recovery.

A basis for denying the right to contribution has also been stated by courts from states other than Texas, but without either approval or disapproval by the courts of that state. This is the principle which finds expression in 13 Am. Jur. § 51, p. 48, to the effect that in order for the right of contribution to exist, there must be a "common" liability of the several defendants to the party injured.[4]

Therefore, the district court properly denied the railroad contribution from Haymes or the Nunn Electric Supply Company.

The judgment is

Affirmed.

BROWN, Circuit Judge (specially concurring).

I concur in the result and all that is so ably stated down to the point of contribution. Having denied *indemnity* because the railroad breached a duty owing

---

4. Contribution, 13 Am.Jur. § 51, p. 48; 1955 Supplement, Contribution, p. 6. The term "common liability" as used in the cases referred to in Am.Jur., means a liability of the same kind, that is, one arising from the breach of the same duty. This would, of course, not be the case if the liability of one defendant arose under the Federal Employees Liability Act or under a state Workmen's Compensation law, and that of the other defendant arose out of the breach of a common law duty of ordinary care.

to Haymes, this is an ample basis for denying contribution under the Texas Statute, Article 2212, Vernon's Texas Civil Statutes, or the common law reserved by its terms. What has been said of the statute, "It would not be within the spirit of this statute to allow a right of contribution in favor of a tort-feasor where the event which brought about the injury resulted from his violation of a duty which he owed to the other tort-feasor from whom contribution is sought", Wheeler v. Glazer, 137 Tex. 341, 153 S.W.2d 449, 452, 140 A.L.R. 1301, would apply to non-statutory contribution.

Texas has not yet voiced a policy that a right of contribution otherwise existing is unavailable because the original plaintiff could not have recovered from the co-tort-feasor. Until it does, we ought not to forge such a doctrine out of analogous material so weak as Patterson v. Tomlinson, Tex.Civ.App., 118 S.W.2d 645. The decision on this point should await full exploration of the factors bearing upon it, not the least of which is that modern concepts of indemnity and contribution seek to apportion the total loss on those who bring it about in fact. It is the loss, measured sometimes by the judgment which the one has been required to pay, which is to be shared. It has been sustained because of the joint wrongs of several. It is no less because a bar, statutory or otherwise, denies recovery as between a plaintiff and one of the defendants. The allowance does not defeat the policy of non-liability reflected by such bar since the obligation of one co-tort-feasor to the other springs entirely from a different source—the duty to each other and the violation of it. The policy of apportionment of loss is as vital as the policy of non-liability. This collision of policy is for Texas to decide. See Otis Elevator Co. v. Cameron, Tex. Civ.App., 205 S.W. 852.

If the right, because of this assumed impediment, did not exist at common law, then the statute, Art. 2212, comes into play and Wheeler v. Glazer, supra, not the impediment, supplies the answer.