## EISEMAN v. PENNSYLVANIA R. CO.
### No. 8698.

Circuit Court of Appeals, Third Circuit.
Argued Feb. 5, 1945.
Decided Sept. 5, 1945.

See also 3 F.R.D. 338.

B. Nathaniel Richter, of Philadelphia, Pa. (William T. Connor and Scott, Connor & Scott, all of Philadelphia, Pa., on the brief), for appellant.

Philip Price, of Philadelphia, Pa. (Scott Seddon and Barnes, Dechert, Price and Smith, all of Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Circuit Judge, and FORMAN and LEAHY, District Judges.

BIGGS, Circuit Judge.

The plaintiff, the widow and executrix of Louis Eiseman, a conductor of a shifting crew employed by the defendant railroad, brought suit under the Federal Employers' Liability Act and the Safety Appliance Act, 45 U.S.C.A. § 51 et seq. and § 1 et seq., to recover damages for the death of her husband which resulted from an accident at the 52nd Street classification yard of the defendant at Philadelphia. The jury found a verdict for the plaintiff, answering certain interrogatories stated and discussed hereinafter. The court below entered a judgment n.o.v. for the defendant [1] and the plaintiff appealed.

Since the jury found in favor of the plaintiff the inferences to be drawn from the evidence must be those most favorable to the plaintiff. The following appears from the testimony. All of the tracks of the defendant at the points with which we are concerned run about east and west. At 8 P.M. on the night of February 19, 1943 Eiseman and his crew decided to stop work for "lunch and twenty

---

[1] The court below gave an oral opinion which, though transcribed, has not been reported for publication.

minutes."[2] The night was dark but clear. Running through the yard are two tracks with which we are primarily concerned. The first of these, designated as No. 2 track, on which Eiseman was killed, is the first track to the north of an elevated structure which carries a track designated as No. 4. No. 4 is clearly a main line track. The plaintiff asserts that No. 2 track is the first of the yard tracks and is not a main line track. The defendant contends to the contrary. This question of fact presented is not of major importance in view of the issue on which the appeal turns. Eiseman's crew had been working on the hump tracks to the north of the No. 2 track.

There is evidence from which the jury could have found that Eiseman told one of his brakemen, Canavan, that he would drop off his train, go over to the 52nd Street tower and get leave of Buckson, the yardmaster, to stop work. Whatever was his reason Eiseman did leave his train and did go on the No. 2 track. He was there struck by the second section of a westbound express train, No. 65. Because this train was 7 minutes late it was running on track No. 2 instead of on track No. 4 (the track elevated structure above track No. 2) as was usual. Train No. 65 did not run on track No. 4 because a local train running ahead of it on No. 4 was scheduled to stop at the 52nd Street Station. No. 65 would have had to have stopped behind the local on an upward-inclined ramp. If No. 65 had made such a stop it would have been unable to get over the crest of the ramp without a pusher. Consequently, No. 65 was moved onto the No. 2 track at 44th Street.

■ Eiseman's negligence may not be doubted. He had only to step off the No. 2 track to avoid the accident. Eiseman's negligence, however, went only to the question of mitigation of damages as the court below properly charged. See 45 U.S.C.A. § 53. The primary question which was before the court below was whether train No. 65 was negligently operated as charged by the plaintiff. If the accident resulted "in whole or in part" because of the defendant's negligence the plaintiff was entitled to recover. See 45 U.S.C.A. § 51.

The court submitted interrogatories to the jury.[3] Question No. 5 was as follows, "Was the engine bell of No. 65-2 ringing as train approached the point where Eiseman was struck?" The answer of the jury was "No." The defendant contends and the court below agreed, that the evidence that the bell was not rung was so "negative" in its nature that it could not support a charge of negligence. Graveson, the engineer of No. 65, testified that he turned[4] on the bell of his engine so that it rang continuously for a distance equivalent to about a city block before coming to 52nd Street. When examined further, however, it appeared that Graveson had no recollection of turning on the bell but that it was his recollection that he always caused the bell to ring when his engine passed along the No. 2 track at or near the point of the accident. The defendant therefore was relying upon a "habit of care." See State v. Manchester & L. Railroad, 52 N.H. 528, 532, 549. See Wigmore on Evidence, 3rd Edition, Vol. 1 § 97. The "habit" relied on by the defendant in the case at bar was shown to be slight since the jury could have found from the evidence that Graveson had driven an engine on the No. 2 track at the point of the accident only once or twice before.[5]

Seeley, a brakeman engaged in riding empty freight cars down the hump into the classification yard, testified that he saw No. 65 coming down the No. 2 track, observed its headlight, but did not hear a bell ring.

---

[2] In other words, for food and a twenty minute rest.

[3] These (save No. 5 stated above) with their answers were as follows:

No. 1. "Was Eiseman struck by train No. 65-2?" Answer, "Yes."

No. 2. "Did the defendant provide Eiseman with a reasonably safe place in which to work?" Answer, "Yes."

No. 3. "Was it negligent on the part of the defendant to run train No. 65-2 on track No. 2 at or about the point of the accident, with the headlight dimmed?" Answer, "No."

No. 4. "Was the engineer of train No.

65-2 negligent in failing to see Eiseman in time to avoid the accident?" Answer, "No."

No. 6. "Is your verdict for the plaintiff or the defendant?" Answer, "For the plaintiff."

No. 7. "If your verdict is for the plaintiff, what amount do you fix as damages?" Answer, "$5,000."

[4] The bell was an automatic one put in operation by turning an air valve in the cab of the engine.

[5] Graveson's testimony on this very important point is far from clear.

He was asked by the plaintiff's counsel, "Was there any bell ringing on that train?" He replied, "I didn't hear any. It was quite a distance. I might not have heard it if it was ringing." At a later point in his testimony he repeated his statement that he "didn't hear any bell," but he also said that when he first saw No. 65 the train was about at the 52nd Street tower and he paid no further attention to it. Eiseman's brakeman, Canavan, stated that he did not "see" No. 65 and his evidence is so uncertain as to time as to be without substantial probative value on the issue of whether the bell was rung immediately prior to the accident.

The testimony of Buckson, the yardmaster and operator of the 52nd Street tower, was of a somewhat different character. He saw No. 65 pass before his tower at a distance of about 20 feet. He stated that if "bells" had been ringing he probably would have heard them, though he qualified this statement by saying that the sound of bells of shifting engines "was heard all the time in the yard." The jury could have found none the less from the evidence of Caldwell, a switch tender in the 52nd Street tower, that Buckson had a special reason to note the passing of No. 65 and therefore should have heard its engine bell if it had been rung. Caldwell testified that he had heard Buckson by telephone ask permission from the operator of the Overbrook lock to use the No. 2 track for moving a train out of the 52nd Street yard after No. 65 had passed. Buckson's evidence that he "probably" would have heard a bell ringing should not be deemed to be "negative" testimony. In expressing this conclusion we are not unmindful of the fact that on cross-examination Buckson was asked, "You would not know whether the bell was ringing or not? You have no recollection?" and he replied, "I have no recollection, and I can't say." The issue of fact presented by this statement and Buckson's earlier evidence that if the bell had been rung he "probably" would have heard it was for the jury. The testimony of Graveson, the engineer, on which the defendant relies as "affirmative" is in fact little more than negative.

The negative evidence rule has been adopted by the federal courts but by the weight of the decisions it has been so formulated as to turn upon the circumstances of each individual case. If a witness was in a position where "in all prob-

ability" he would have heard a bell signal if one had been given, the issue of the giving of the signal is treated as one for the jury. See the clear and emphatic ruling of Judge Phillips in Union Pac. R. Co. v. Burnham, 10 Cir., 124 F.2d 500, 502, and the authorities cited in the note to that opinion. We conclude that the court below was in error in entering judgment n.o.v.

In view of our ruling it is unnecessary to discuss any other points raised by the parties.

The judgment is reversed and the cause is remanded with the direction to the court below to reinstate the verdict heretofore found in favor of the plaintiff and to give judgment thereon in favor of the plaintiff.