### FLUSK v. ERIE R. CO. et al.
### Civ. A. 1057–51.

United States District Court
D. New Jersey.
Jan. 29, 1953.

Charles J. Tyne, Newark, N. J. (John W. McGeehan, Jr., Newark, N. J., of counsel), for plaintiff.

Emory, Langan & Lamb, by James B. Emory, Jersey City, N. J., for defendant Erie R. Co.

Reynier J. Wortendyke, Jr., Newark, N. J., for defendant General Motors Corp.

HARTSHORNE, District Judge.

A jury trial lasting over two weeks, and consisting, in fact, of two cases, the first a negligence case by Flusk, an Erie Railroad employee, against both Erie and General Motors Corporation, the other an indemnity case by Erie Railroad against General Motors, resulted in a general verdict for plaintiff in the negligence case in the amount of $45,000. It also resulted in a special verdict on the cross-claim in the indemnity case of Erie against General Motors, upon the basis of which special verdict the court entered judgment on both counts, in favor of defendant General Motors. No attack is made on the judgment for General Motors on this cross-claim.

But both General Motors and Erie attack the verdict in the Flusk case, both claiming the damages to be excessive,

and General Motors, in addition, claims that the special verdict on the cross-claim is inconsistent with the general verdict in the Flusk case. Since such alleged inconsistency, if it exists, may require the setting aside of the general verdict in the Flusk case, the quantum of damage point will not be considered until after we consider this alleged inconsistency in the verdicts in these two different cases.

## Are The Verdicts Inconsistent?

Because of the obvious difficulty attendant upon any attempt to ascertain the true intent of a jury in using lay words to reach legal conclusions, the rule must be borne in mind that every reasonable intendment must be indulged in to support a verdict; in other words, the two findings must be in irreconcilable conflict before they may be set aside. Theurer v. Holland Furnace Company, 10 Cir., 1941, 124 F.2d 494; Bass v. Dehner, 10 Cir., 1939, 103 F.2d 28, 34; 5 Moore's Federal Practice, Sec. 49.04, p. 2211 (2nd ed. 1951). The above authorities, in fact the authorities generally, apply this rule to cases of alleged inconsistencies in special verdicts as they arise in a single case. F.R.C.P. Rule 49(a), 28 U.S.C.A.; Feldmann v. Connecticut Mutual Life, 8 Cir., 1944, 142 F.2d 628, or to alleged inconsistencies between a general verdict and the answers to written interrogatories of fact basic to such general verdict. F.R.C.P. Rule 49(b). Doubtless because of the unusual situation here presented, where two actions were tried together, with a general verdict in one and a special verdict in the other, this court has been referred to no precedents directly in point. But it would seem that, if any inconsistency between verdicts in two different cases is to be considered at all, as to which there is question, the strict rule pertinent to a single case should be applied, a fortiori, i. e., that the validity of these two verdicts in these separate cases should be upheld unless they are irreconcilably in conflict. Both to determine if these verdicts in these two cases may be considered together at all, and next to determine if they are in irreconcilable conflict, we must consider the nature of these two cases.

(1) The Flusk negligence case.

Here Flusk, an employee of the Erie Railroad, sued his employer, the Erie, under the Federal Employers' Liability Act, 35 Stat. 65, 45 U.S.C.A. § 51 et seq., for negligence in several aspects, including: a) negligent handling of its crane in unloading the crates of General Motors carried on the Erie freight car, whereby Flusk was injured; b) failure of Erie to give Flusk a reasonably safe place to work since the General Motors' crates were defective and unfit for Erie's practices in unloading by crane. Flusk, in the same action, but in a separate count, also sued General Motors for common law negligence, on the ground, among others, that the General Motors' crates were defective and unfit for the crane unloading practice of Erie. Flusk also sued both the Erie and General Motors, as joint tort-feasors.

(2) The cross-claim by Erie against General Motors.

Here Erie sought, not contribution from a joint tort-feasor, under the New Jersey statute, but total indemnity by one joint tort-feasor to another, a relatively unusual doctrine, based upon the following authorities:

Restatement Restitution, Secs. 93, 95 (1936).

Boston Woven-Hose & Rubber Company v. Kendall, 1901, 178 Mass. 232, 59 N.E. 657, 51 L.R.A. 781; United States Casualty Co. v. Hercules Powder Co., 1950, 4 N.J. 157, 72 A.2d 190; Popkin Bros., Inc. v. Volk's Tire Co., 1941, 23 A.2d 162, 20 N.J. Misc. 1; Middlesboro Home Telephone Co. v. Louisville & N. R. Co., 1926, 214 Ky. 822, 284 S.W. 104; Seaboard Airline Railway Co. v. American District Electric Protective Co., 1932, 106 Fla. 330, 143 So. 316; Central of Georgia Railway Co. v. Macon Railway & Light Co., 1913, 140 Ga. 309, 78 S.E. 931; Gulf, Mobile & Ohio Railway Co. v. Arthur Dixon Transfer Co., 1951, 343 Ill. App. 148, 98 N.E.2d 783. Also involved were the principles of Szabo v. Pennsylvania Railroad, 1945, 132 N.J.L. 331, 40 A. 2d 562 applicable to the employer's payment of emergency medical expenses for an injured employee.

Were the jury to be charged to return general verdicts in these two separate cases, the negligence case on the one hand, the indemnity case, on the other, the result would be that the jury would have to be charged in the negligence case, not only on the ordinary principles of negligence and the different kinds of negligence above alluded to, but as to the differentiation in the effect of the possible contributory negligence of plaintiff. For same would bar recovery in the common law action against General Motors, but would not bar recovery in the statutory action against Erie, where such contributory negligence would only act as a proportionate diminishing factor in any verdict for Flusk. In addition, the charge to the jury on the indemnity case would require careful delineation of the difference between primary and derivative negligence, and the ascertainment by the jury of whether the negligence of Erie and General Motors as to Flusk was, as between Erie and General Motors, primary or derivative.

To be more specific, if the negligence of Erie consisted solely in the negligent handling of its crane, then Erie's negligence would be primary, no matter whether General Motors were negligent or not in some other aspect, and Erie could not have indemnity. But if, on the other hand, General Motors had built its crate defectively, or so that it was unfit to withstand the anticipated handling of such crate by Erie, to the danger of Erie's personnel, then the negligence of General Motors would be primary in that regard. And if Erie were found negligent, solely because it failed to give Flusk a reasonably safe place to work, in that he was faced with this General Motors crate, unfit to be handled by Erie in an otherwise proper manner, then Erie's negligence would be derivative. Under the above authorities, the result would be that, if the negligence of Erie was but derivative, while the negligence of General Motors was primary,

the primary joint tort-feasor, General Motors, would be required to indemnify completely the derivative joint tort-feasor, Erie, who perchance had been held responsible to Flusk solely because of the primary negligence of General Motors. But, of course, the charge to the jury as to this, in itself rather unusual doctrine, would have to be complicated by a further charge covering the possibility that Erie, in addition to being a derivative tort-feasor, was also a primary tort-feasor, for another reason, in which event no indemnity would lie. Further, the charge would have to cover the possibility that while there might be primary negligence as to General Motors as above, and derivative negligence as to Erie, as above, there might also be contributory negligence on the part of Flusk, which would, as above, bar a verdict for Flusk against General Motors in the negligence case, but not bar a verdict against Erie in that case. Of course, if such were the situation, Erie could not ask indemnity from General Motors, on the above indemnity rule, since the rights against General Motors of Erie, the tort-feasor, could hardly rise higher than the rights against General Motors of Flusk, the person against whom Erie had committed the tort. Spaulding v. Parry Navigation Co., 2 Cir., 1951, 187 F.2d 257, certiorari denied Parry Navigation Co. v. Todd Shipyards Corp., 342 U.S. 918, 72 S.Ct. 362, 96 L.Ed. 686; Slattery v. Marra Bros., 2 Cir., 1951, 186 F. 2d 134.

Faced with all these principles which would have to be explained to the jury, were general verdicts to be asked of them in both these cases, the court concluded that any such complex general charge would inevitably give the jurors such an attack of intellectual indigestion that their verdicts could not possibly be based understandingly on the principles of law involved, and that injustice was accordingly only too apt to result.[1] On the other hand, since the very same evidence as

1. That this is a serious danger in any case, where complicated principles of law are involved, is made crystal clear in Skidmore v. Baltimore & Ohio Railroad, 2 Cir., 1948, 167 F.2d 54, 60, in the course of which, among other authorities, Professor Sunderland is quoted for the aphorism that "twelve men can easily misunderstand more law in a minute than the judge can explain in an hour".

to liability would be called for in both cases, it did not seem fair or wise to try this lengthy case twice. Therefore, after conferring with all counsel, the court framed for the Flusk negligence case a form of general verdict in the alternative, depending upon whether or not Flusk recovered, and if so, from whom, and in what amount. In the cross-claim, a form of special verdict was framed in the alternative, directed to the bases of the negligence of Erie and General Motors, respectively. The answers to these would thus settle the primary issues there, i. e., whether or not General Motors' negligence, if found, was solely primary, and Erie's negligence, if found, was, on the other hand, solely derivative.

Accordingly, at the trial the court gave the usual general charge called for in the Flusk negligence case in its two aspects. Then it called the jury's attention to the separate cross-claim for indemnity by Erie against General Motors in both its aspects, adding that, in order to simplify the jury's consideration of the matter, it was not going into the complex questions raised in such cross-claim, but was submitting a form for the jury's entering a written special verdict in regard to such cross-claim, as well as a general verdict in the negligence case. As to this charge, as supplemented by a series of written requests to charge from the parties, duly charged by the court, no question is presently raised.

The form of general verdict on the Flusk case, and the form of special verdict on the indemnity action between Erie and General Motors, containing the findings of the jury, is as follows:

"Flusk v. Erie R. R. and General Motors

"Form of Special Verdict

"1. As charged, is Flusk entitled to recover from

"(a) Erie R. R. Company? Answer: Yes

"(b) General Motors? Answer: Yes

or

"2. Is Flusk not entitled to recover from either Erie R. R. or General Motors? Answer:

"3. If plaintiff is entitled to recover, then state the amount of such verdict, excluding stipulated medical expense,

"(a) if against Erie R. R. and General Motors jointly: Answer: $45,000.00

"(b) if against General Motors alone: Answer:

"(c) if against Erie R. R. alone: Answer:

"4. If plaintiff is entitled to recover from both Erie R. R. and General Motors, then

"(a) What is the basis of the negligence of Erie R. R.? Answer:

"Erie was negligent in using tools and methods of doubtful safety in discharging large and heavy cases from

---

But that this sound reason for the use of special verdicts in a complicated case by no means derogates from the soundness of jury verdicts in the ordinary and relatively simple case, whether criminal or civil—note the actual experience with jury verdicts over many years, set forth in "Jury Verdicts: A Study of Their Characteristics and Trends", American Bar Association Journal, Vol. 35, No. 2, February 1949, page 113. In short, for the ordinary case, a jury's general verdict is a sound instrument of justice, but in a complicated case we can only expect to attain justice through a jury by the use of a special verdict, or a general verdict with interrogatories.

Of course, this question as to how to use a jury to attain justice is an entirely different one from the question of whether, when the Constitution permits, the decision of a case by a jury, with its possible misunderstandings of the law and personal frailties, is preferable to the decision by a judge, with his experience, yet possible personal predilections. As to how this latter question is being answered in this country, as compared with England—from which the United States inherited the jury trial, but where such trial has now become largely obsolescent—see the authorities cited in Skidmore v. Baltimore & Ohio Railroad, supra.

gondola cars. Also Erie was negligent in the operation of the crane at the time of the accident.

"(b) What is the basis of the negligence of General Motors? Answer:

"Failure of General Motors to protest the practices pursued by the Erie Railroad in handling cargo of this type which General Motors considered unsafe to personnel and/or cargo. It is felt that General Motors had adequate opportunity to observe these practices."

■ In the light of the above, and of the more than two weeks of testimony, much of it of a technical and expert character, not only medical, but as to the relative characteristics of various woods, and wood construction and freighting practices, there is no question but what the jury's general verdict, in the one case, and its special verdict, in the other, were both sensible, and in accord with the weight of evidence (save perchance as to quantum of damages, considered later). Furthermore, considering the special verdict as to General Motors, on which that defendant's attack is concentered, its similarity to the defendant General Motors' own requests to charge, as charged by the court, is little less than striking. For instance, General Motors' request to charge No. 2, as charged, was:

"2. As the manufacturer and loader of the case in which its merchandise was contained, General Motors was under a duty to exercise reasonable care to employ such materials and methods in the construction and loading of the shipping case as were appropriate to the use for which it was intended and would render the loaded case reasonably safe for such handling

in the course of shipment as such defendant might reasonably be charged with anticipating."

General Motors' request to charge No. 16, as charged, was:

"16. Irrespective of whether representatives of General Motors Corporation may have observed methods and equipment used by Erie in unloading General Motors' shipments, General Motors Corporation was not required to provide, in its methods of loading or manner or materials of construction of its cases, against every hazard to shipment or personnel which might arise as a result of Erie's handling of its unloading equipment, but only against hazards which it should reasonably have anticipated."

■ If not self-evident, it will shortly be shown that the principles embodied in such special verdict were in accord with "the law of the case", or rather the law of the other case, as charged at the request of the very party now objecting thereto. Further, the similarity of such special verdict to Restatement, Torts, Sec. 388, recently referred to by the Court of Appeals of the Third Circuit in Hopkins v. E. I. Du Pont De Nemours, 199 F.2d 930, shows it to be sound law.[2]

Obviously the form and sentence structure of a special verdict, delivered in laymen's vernacular, can hardly be expected to be in exact accord with the verbiage of a legal treatise. General Motors, in attacking this special verdict, overlooks this obvious fact, and seeks to dissect the verdict with a legal scalpel.

We turn, therefore, to the question of whether, even assuming a special verdict in

2. Restatement: Torts

"§ 388. Chattel Known to be Dangerous for Intended Use.

"One who supplies directly or through a third person a chattel for another to use, is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied;

"(b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and

"(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

one case can be the basis of an attack on a general verdict in a different case, there is any ambiguity as to whether these two verdicts in these two cases are in irreconcilable conflict. In the first place, we must bear in mind the purpose of this special verdict. Its purpose was not to explain the general verdict in the negligence case, which General Motors is now trying to do. For this it was inappropriate. Its purpose, as the jury was charged, was to lay the basis for entering judgment in the indemnity case as between Erie and General Motors. The determinative point there was whether or not the negligence of General Motors was primary, that of Erie derivative therefrom. Hence, the jury were required to give "the basis of the negligence of Erie Railroad" and "the basis of the negligence of General Motors". For the answers to these questions would furnish the very information requisite to determine the point at issue.[3]

Furthermore, the entire special verdict is not only good law, Restatement Torts, Sec. 388, supra, but such entire verdict, save for a single clause, in fact based on proof, was substantially "the law of the case", and taken from General Motors' own requests to charge, supra. This single clause refers to the "failure of General Motors to protest the practices pursued by the Erie Railroad". This, in the last analysis, is the pin on which General Motors hangs its hat. But this clause does not mention Flusk, plaintiff in the negligence action. It does mention Erie and General Motors, the parties in the indemnity case, to whom the jury were repeatedly charged that such verdict solely applied. Again, we must bear in mind that this special verdict was an attempt by laymen to state a legal conclusion in the vernacular. Considered thus, what this special verdict said was, using the jury's own words, "that General Motors had adequate opportunity to observe these practices * * * pursued by the Erie Railroad in handling cargo of this type", that "General Motors considered (this situation) unsafe to personnel and/or cargo", and that, despite this, there was a "failure of General Motors to protest the practices pursued by the Erie Railroad. Thus arranged, it is not the failure to protest which is the gist of the negligence as found by the jury, but the forwarding of the crate to be used in a manner which would endanger personnel. Such failure to protest is thus, at worst, mere surplusage, and surplusage which does not deal at all with Flusk, whose verdict is alleged to be destroyed by such surplusage.

█ Looked at in this common sense fashion, as it should be, the special verdict in the indemnity case is not in irreconcilable conflict with the general verdict in the

---

3. Proverbially, "hindsight is better than foresight." So while the form of special verdict here used was entirely appropriate for its purpose, it can now be seen that any such question as the present might have been avoided if, instead of asking the jury to find "the basis of the negligence of General Motors" and that of Erie, respectively, the verdict on the indemnity case had been entirely separated from that on the negligence case, and framed somewhat as follows:

Erie Railroad against General Motors
Form of Special Verdict
Only if Flusk is entitled to recover from both Erie R. R. and General Motors, then
(a) Is the basis of the negligence of Erie R. R. the fact that
(1) Erie was negligent in its operation of the crane at the time of the accident    Answer:
(2) Erie did not use reasonable care to furnish Flusk a reasonably safe place to work, in that
(i) Erie knew the General Motors cases could not safely be handled by it.    Answer:
or
(ii) Erie's practices were unsafe otherwise than as due to the General Motors cases, etc.
Answer:
(b) Is the basis of the negligence of General Motors the fact that
The cases of General Motors were defective in that
(1) They were made of defective wood
Answer:
(2) Despite General Motors' knowledge of Erie's unloading practices, the cases were not constructed to withstand such practice, and so were unsafe to personnel.
Answer:

negligence case. Indeed, there is no conflict at all.

Further, at the very time the jury started to render this verdict, the court inquired of counsel, and before receiving the verdict, whether they desired the court to ascertain more clearly the meaning of this lengthy verdict. Counsel expressed no such desire. The verdict was thereupon received.

True, General Motors' counsel said he was "not content with the findings" of the jury. However, he added "but I understand the findings", as stated by the jury and referred to by the court. Of course, he was "not content with the findings", which had just found General Motors liable as a joint tort-feasor to the extent of $45,000. But when he said "I understand the findings", and had no "question" as to them, and when he failed to accept the court's invitation "to ascertain more clearly what the jury mean by their statement" (special verdict), he must have meant that not only was the verdict clear and unambiguous, but that it appeared lawful and consistent. For had General Motors then raised any question as to the meaning of the special verdict or its possible inconsistency, the jury's intent would have been lawfully and promptly ascertained by the court, as intimated, before the verdict was formally received. Were this intent of the jury then found to be unlawful, as inconsistent, as General Motors now contends, the jury's attention would have been called thereto, the pertinent law explained, and such tentative error doubtless promptly corrected. Were the jury's intent lawful, despite a possible ambiguity in expressing a legal conclusion in the vernacular, then also such ambiguity would have been clarified, and an unambiguous lawful verdict obtained. In short, after a party has refused the invitation of the court to clarify any possible ambiguity in a lengthy special verdict, and thereby promptly obtain a lawful final verdict, such party can hardly rely on a mere ambiguity in the verdict, as a basis for nullifying a trial lasting over two weeks, with the consequent waste of time and money of all concerned, particularly in the light of the rule that a jury's verdict is to be sustained, in the absence of irreconcilable conflict.

Again, General Motors seeks to attack the verdict rendered in favor of Flusk, who was not a party to the case in which the questioned special verdict was rendered, and who in fact was not mentioned in such special verdict. General Motors participated in framing the question giving rise to the special verdict. As framed, it was appropriate to the indemnity case, but totally inappropriate to the Flusk case. Flusk could not object thereto. How can Flusk's verdict in justice be nullified by a special verdict in another case, appropriate to such case, and inappropriate to Flusk's case, when rendered in answer to a question itself appropriate to such other case, but inappropriate to the case whose verdict is sought to be nullified? Surely General Motors, which failed to accept the court's prompt invitation to question such verdict, should not now be heard to object thereto.

In any event, as seen above, the conflict between the special verdict directly attacked and the general verdict in the other case, sought to be nullified, is not irreconcilable. The attack on the general verdict in the Flusk case, in this aspect, thus fails.

Quantum of Damages.

Both General Motors and Erie seek to set aside the verdict as to damages, claiming same to be so excessive as to show passion, prejudice, partiality or mistake. The injuries to plaintiff were indeed serious, with one or more skull fractures, from which he lay for many days in a precarious condition in the hospital. However, whether because of his youth, or otherwise, the only permanent injuries remaining, outside of scars, are occasional headaches, dizziness, blurring of the vision, and ringing in the ears, which at most occur for an hour or so a day. There is no total, or even substantial, disability which really affects plaintiff's earning a livelihood or even his domestic life. Despite these permanent injuries, including the scars, he has since become married.

It would serve no useful purpose to cite authorities on damages, though it must, of

course, be borne in mind that the dollar today is worth but half what it was a score of years ago. Suffice it to say, that while the defendants have cited several recent cases where permanent total disability, or its equivalent, i. e., a disability much greater than Flusk's, was reduced from some $45,000 to some $30,000, plaintiff has cited no case of that character, where a verdict of $45,000 was sustained. It would therefore seem that the present verdict is clearly excessive, and that a fair verdict under all the circumstances, would be $30,000.

Accordingly, a form of order will be presented by counsel that, if plaintiff does not accept the reduction of the verdict against both Erie and General Motors to the amount of $30,000, within two weeks from the date of such order, a new trial will be granted.