**John F. KENNEDY**

v.

**PENNSYLVANIA RAILROAD COM-PANY, Defendant and Third-Party Plaintiff, Appellee,**

v.

**UNITED STATES STEEL CORPORATION, Third-Party Defendant, Appellant.**

**No. 12870.**

United States Court of Appeals Third Circuit.

Argued Oct. 9, 1959.

Reargued June 20, 1960.

Decided Sept. 14, 1960.

Ira R. Hill, Pittsburgh, Pa. (Reed, Smith, Shaw & McClay, Pittsburgh, on the brief), for appellant.

Bruce R. Martin, Pittsburgh, Pa. (Pringle, Bredin & Martin, Pittsburgh, on the brief), for appellee.

Before BIGGS, Chief Judge, and McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

In this litigation under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, the original plaintiff sued his employer, Pennsylvania Railroad Company (Railroad), for damages resulting from injuries sustained allegedly as the result of the railroad's negligence which consisted inter alia in faulty maintenance of the track involved and of inefficient air brakes on the train which plaintiff had been riding just prior to having jumped or been thrown off. The defendant railroad filed a third-party complaint against United States Steel Corporation (Steel). That set out that Steel had ordered the cars which made up the train in charge of plaintiff delivered for loading to its coal mine near Bute, Pennsylvania; that the only track available for them was coke yard track No. 5; that to place the cars it was first necessary to move empty cars on the south end of the track to its north end over a private road crossing of the Steel Corporation; that upon shoving those cars over said crossing, the first car became derailed because the track was clogged with clay, dirt and debris which Steel had permitted to become lodged upon and over said track and rails from its trucks as they passed back and forth over the track. "As a result of the derailment", continued the complaint, "the train struck an abutment causing the injuries and damage alleged by the plaintiff." Steel's ownership of and obligation to maintain the track and crossing was specifically set out. The railroad therefore asked for indemnity or contribution from the third-party defendant " * * * for all or part of what sums may be adjudged against it * * *, in favor of the plaintiff, * * *."

Steel denied any negligence. It affirmatively stated that the railroad had no permission to use the particular crossing or track and was a trespasser in its shifting operation. It asserted that it had no duty to maintain the crossing or track for the benefit or use of the railroad in the shifting or storage of its cars.

At the trial Kennedy, testifying in his own behalf, said that prior to his engine starting to push the cars already on the track over and beyond the crossing he left the caboose and walked over to the crossing and looked at it. As to its condition he said, "The crossing in my judgment was safe to go over. * * * There was very little dirt on the rails. In my judgment not enough to cause a car to derail. * * * There was some debris on either side of it [the crossing], but not on the rails." He had never had any trouble before on this crossing and it did not look any different than on previous occasions.

Kennedy returned to his position on the end sill at the rear of the train and after the air brake hose was connected told a brakeman it was all right to start the move. The brakeman gave the signal and the train proceeded towards the crossing. As the first car was going over the crossing Kennedy noticed it had become derailed. He told the brakeman to put on the air for an emergency stop. The train had been traveling about five miles an hour. It continued for at most a car length and a half after Kennedy had first noticed the derailment and then struck two abutments which were from two to three feet off the rails. Kennedy

jumped from his car after the collision with the second abutment and received the injuries for which he sued.

At the trial the court submitted the following interrogatories to the jury:

"1. Did the derailment and injuries to plaintiff result in whole or in part from the negligence of the Pennsylvania Railroad Company in failing to provide plaintiff with a reasonably safe place to work because of the bad or defective condition of the roadbed, specifically the crossing?

"Answer 'Yes'
or 'No'                    Answer: Yes

"2. Did plaintiff's injuries result in whole or in part by reason of any defect or insufficiency due to the negligence of the Pennsylvania Railroad Company in its cars, trucks, appliances or other equipment, and which defect or insufficiency in the equipment was the cause of the derailment?

"Answer 'Yes'
or 'No'                    Answer: No

"3. Did plaintiff's injuries result in whole or in part by reason of a combination of the factors as set forth in both Interrogatories 1 and 2; that is, did the derailment occur because of the insufficiency or bad condition of the roadbed and also because of a defect or insufficiency in the cars, trucks, appliances or equipment?

"Answer 'Yes'
or 'No'                    Answer: No

"4. State the amount of damages you award to plaintiff. $8,500.00.

"5. Was the United States Steel Corporation, third party defendant, under the evidence, required to maintain the crossing in a reasonably safe condition for Pennsylvania Railroad Company purposes on July 14, 1954?

"Answer 'Yes'
or 'No'                    Answer: Yes

"6. If your answer to Interrogatory No. 5 is 'Yes,' that is, that the United States Steel Corporation was required to maintain the crossing in a reasonably safe condition, did the United States Steel Corporation maintain the crossing in a reasonably safe condition on July 14, 1954?

"Answer 'Yes'
or 'No'                    Answer: No"

On the basis of the answers the court molded a judgment in favor of the plaintiff Kennedy in the main action, and in favor of the Railroad for indemnity in the third-party action.

■ The trial judge properly charged the jury concerning the effect of contributory negligence on the amount of the judgment recoverable by Kennedy— that is that contributory negligence is not a defense but goes only to mitigation of damages. Eiseman v. Pennsylvania R. R. Co., 3 Cir., 1945, 151 F.2d 222. However, the jury was not required, by interrogatory, to make an explicit finding as to whether such negligence was present nor is that fact readily discernible from the amount of the judgment.

Interrogatory Five established Steel's responsibility for maintaining the crossing in a reasonably safe condition but in no wise indicates the source of that responsibility i. e. whether from the relationship of possessor of land to business invitees [1] or from an express agreement. Because of the fine distinction of liability between the two situations, the trial judge should have required more exact findings, and in conjunction therewith, should have submitted interrogatories to the jury to determine whether Railroad knew or should have known of the existence of the dangerous condition and if Railroad acquiesced in the continuance of the same.

Dependent upon the above findings there are several possibilities which may defeat, either entirely or partially, Railroad's claim to indemnity.

■ If there is no express agreement as to indemnity between Railroad and

1. The facts do not appear to give rise to an issue that Railroad was a gratuitous licensee as contrasted to a business invitee.

Steel, and Kennedy is found to have been contributorily negligent, Steel may plead his negligence as a bar to any recovery over by Railroad. See Ft. Worth & Denver R. Co. v. Threadgill, 5 Cir., 1955, 228 F.2d 307; Panichella v. Pennsylvania R. R. Co., D.C.W.D.Pa.1958, 167 F.Supp. 345, reversed on other grounds, 3 Cir., 1959, 268 F.2d 72; Flusk v. Erie R. Co., D.C.N.J.1953, 110 F.Supp. 118, 121; Lawrence v. Great Northern R. Co., D.C.Minn.1951, 98 F.Supp. 746, affirmed sub nom. Waylander-Peterson Co. v. Great Northern R. Co., 8 Cir., 1953, 201 F.2d 408, 414–15, 37 A.L.R.2d 1399; Wallace v. New Orleans Public Belt R. Co., D.C.E.D.La.1948, 78 F.Supp. 724, reversed on other grounds, New Orleans Public Belt R. Co. v. Wallace, 5 Cir., 1949, 173 F.2d 145. See also analogous Jones Act cases: Spaulding v. Parry Navigation Co., 2 Cir., 1951, 187 F:2d 257, 261; Pabellon v. Grace Line, Inc., D.C.S.D.N.Y.1951, 12 F.R.D. 123; Ginsburg v. Standard Oil Co. of New Jersey, D.C.S.D.N.Y.1945, 5 F.R.D. 48. The main action between Kennedy and Railroad is governed by the F.E.L.A. where the doctrine of comparative negligence is applied. In the third party action, the law of Pennsylvania applies under which even the slightest degree of contributory negligence will defeat a claim. Middleton v. Glenn, 1958, 393 Pa. 360, 143 A.2d 14. It is apparent that the area of liability under the federal act is much more broad than under the state law. Unless Steel expressly agreed to make restitution to Railroad for losses suffered by virtue of this broader liability,[2] Steel can be held only to what its liability would have been under the state law, which in the case of a plaintiff's negli-

gence, is no liability. By analogy, in Pennsylvania R. R. Co. v. Sun Oil Co., 1956, 383 Pa. 537, 541–542, 119 A.2d 221, the Pennsylvania Supreme Court refused to impose the F.E.D.A. concept of negligence upon a third party defendant in the absence of a showing that such party agreed to subject itself to this stricter theory of negligence. Steel is a party here only because Rule 14, Fed.R.Civ.P., 28 U.S.C.A., allowed Railroad to implead it. To apply the rules of the F.E.L.A. to Steel would be to open the door to the use of the rule as a means of circumventing the doctrine of Erie R. Co. v. Tompkins, 304·U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

Even should no contributory negligence be present, it is important to determine the basis of Steel's obligation to maintain the crossing.

■■ In the absence of an express sidetrack agreement requiring Steel to maintain the portion of trackage in question, Railroad would be at most a business invitee. Pennsylvania has adopted the rule of the Restatement of Torts, § 343 whereby the possessor of land is subject to liability if he fails to exercise reasonable care to make a dangerous condition reasonably safe[3] *and has no reason to believe that they* [business visitors] *will discover the condition or realize the risk involved therein.* San Felice v. United States, D.C.W.D.Pa. 1958, 162 F.Supp. 261, 263; Yania v. Bigan, 1959, 397 Pa. 316, 321, 155 A.2d 343; Engle v. Reider, 1951, 366 Pa. 411, 419, 77 A.2d 621. The jury in answer to Interrogatory Six found that Steel did not use the required care but under the facts the close question of Railroad's knowledge that a dangerous condition existed should also have been submitted.

2. A bare agreement to indemnify without mention of F.E.L.A. liability would suffice because "the parties to the contract are held to have known of the existence of the federal statute at the time they executed their agreement." Wanser v. Long Island R.R. Co., 2 Cir., 1956, 238 F.2d 467, 470, certiorari denied, Long Island R. Co. v. Central Islip Co-op., etc., 1957, 353 U.S. 911, 77 S.Ct. 668,

3. In addition, to subject a possessor of land to liability to a business invitee it is necessary to establish that he "knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk * * *." Restatement, Torts § 343. Lanni v. Pennsylvania R.R. Co., 1952, 371 Pa. 106, 88 A.2d 887.

"A possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon * * * if they know of the condition and realize the risk involved therein." Restatement, Torts, § 340. Rauch v. Pennsylvania Sports and Enterprises, Inc., 1951, 367 Pa. 632, 81 A.2d 548; Ambrose v. Moffat Coal Co., 1948, 358 Pa. 465, 58 A.2d 20.

█ However, if Steel's obligation to maintain the crossing is based on an express agreement, bare knowledge of a dangerous condition will not preclude Railroad from obtaining indemnity. But if Railroad not only knew of the condition but acquiesced in its continuance Railroad's failure to make the crossing safe was reckless. Restatement, Restitution § 95. In this situation, Railroad's negligence is concurrent and it would be entitled only to contribution. 12 P.S. § 2082 et seq.

█ The interrogatories submitted to the jury established that Steel was required to maintain the crossing in a reasonably safe condition and failed to do so. However, in the light of the foregoing the jury findings were not fully determinative of the question of indemnity. Therefore the judgment in favor of the Pennsylvania Railroad Company will be reversed and that cause remanded for a new trial. The judgment in favor of the plaintiff Kennedy was not appealed and will of course stand.

BIGGS, Chief Judge (dissenting in part and concurring in part).

The majority opinion states: "The interrogatories submitted to the jury established that Steel was required to maintain the crossing in a reasonably safe condition and failed to do so." I agree with this statement for it is the foundation for the correct decision in this case. Kennedy was injured because of Steel's failure to maintain the crossing on Steel's property in a safe condition for the Railroad's purposes. See the jury's affirmative answer to Interrogatory No. 5. Kennedy has obtained a judgment against the Railroad under the Federal Employers' Liability Act, 45 U.S.C.A. § 51, because the derailment and the injuries resulted in whole or in part from the negligence of the Railroad in failing to give Kennedy a safe place to work. See the jury's affirmative answer to Interrogatory No. 1. The Railroad has been endamaged to the extent of Kennedy's judgment against it because of Steel's failure to sustain its obligation to the Railroad to maintain the crossing in a safe condition. The Railroad is therefore entitled to recover against Steel the amount of the judgment paid by it to Kennedy. The fact that the doctrine of comparative negligence was applicable in Kennedy's case against the Railroad under the FELA does not alter in any respect the liability of Steel to the Railroad.

True, Steel's liability to the Railroad is measured by the law of Pennsylvania which like the law of any other State requires damages for breach of an obligation. It is true also that the law of Pennsylvania provides that a plaintiff's contributory negligence, "however slight," will bar his recovery in a common law tort case, and if Kennedy had sued Steel and it was demonstrated to the triers of the facts that he was even slightly negligent he could not have recovered against Steel. Middleton v. Glenn, 1958, 393 Pa. 360, 143 A.2d 14, 15, 16. But Steel's obligation to the Railroad is not measured by Pennsylvania tort law but by the contract law of that State. If the FELA had had no application in the case at bar and Steel had entered into an express contract with the Railroad to maintain the crossing in good condition, would anyone contend that the Railroad could not recover from Steel the damages that Kennedy had recovered from it? Yet the situation here is precisely the same. Any defense that the Railroad could have offered against Kennedy was adjudicated in Kennedy's suit against it. No issue as to Steel's breach of duty to the Railroad remains in the case because of the jury's finding as to Steel's obligation to the Railroad and the jury's finding that Kennedy's injuries

resulted from Steel's breach of that obligation. The majority opinion intermingles two distinct and separate theories of liability, one based on implied contract, the other on tort. The error of the majority opinion lies, I think, in the assumption that the Railroad was a mere business invitee of Steel despite the fact the jury's answers to the interrogatories make it clear that the jury found the Railroad to be the beneficiary of an implied contract with the Steel Company to maintain the crossing on Steel's property in a safe condition for the Railroad's purposes. These answers were based on ample evidence.

I would sustain the judgment in Kennedy's favor against the Railroad and I would direct the court below to enter a judgment in favor of the Railroad against Steel for the amount of Kennedy's judgment against the Railroad. In my view a new trial is not necessary. The court is entitled to mould a verdict against Steel as indicated.